### John Shafer v. Peter C. Niver and Others.

A contract for the purchase of lands will not be treated as forfeited by non-payment at the day, where the parties themselves have not treated time as essential, and it is not expressly made so by the terms of the contract.

A, entered into a contract, to deliver to B a certain quantity of lumber at specified times, and B made advances to the amount of $1100 thereon. Performance on the part of A. was secured by mortgage. A being in default, made an arrangement with B on the basis of abandoning the contract, and agreed to pay B $2500. B. subsequently sold the contract to C for $2250; A at the time representing to C that it was worth $2500. It was *held* that A was not entitled, after this sale, to perform the contract, but that C might collect on the mortgage security the $2500 so agreed to be paid.

*Heard April 25th and 30th. Decided July 11th.*

Appeal from Lapeer Circuit in Chancery.

The facts in the case are for the most part fully stated in the opinion. In addition to what is there set forth, it may be added that, by the terms of the land contract between Henry and George Niver and complainant, it was provided that "if any of the payments and conditions above set forth, on the part of the said party of the second part to be made and performed, shall not be made and performed in conformity with the terms hereinbefore set forth, the payments previously made shall be forfeited, and the premises, with the buildings and improvements thereon, shall revert to the said party of the first part, their representatives and assigns, and they may thereupon peaceably re-enter upon and take possession of the same, or, if they shall so elect, the said party of the first part, their

representatives and assigns, may enforce the payment in law of the money due, and make conveyance." The first two payments having been made, complainant, in his bill, sets forth certain facts as an excuse for a failure to make the third payment by the day, and claims to have tendered performance in the latter part of June, 1855. He also claimed, on the argument, that the parties had treated time as not being material: not only by the payment due June 1 1854 having been made and received on the fifth of that month, but also in other ways.

The Circuit Court adjudged complainant to have fully complied on his part with the terms of the lumber contract "so far forth as in equity and good conscience he was bound to," and decreed that he have a reconveyance of the premises deeded by him to Byron W. Clark, to secure such performance. And also that the premises described in the land contract be conveyed to him, on his paying the amount due thereon; namely, the $1400 and interest. Defendants appealed.

*M. Wisner* and *M. E. Crofoot*, for complainant.

*A. C. Baldwin* and *C. I. Walker*, for defendants.

CAMPBELL J.:

The bill in this cause is filed to redeem certain premises covered by securities now in the hands of the defendant, Peter C. Niver, a part being subject to an ordinary mortgage, and in a part of which he holds the legal title, and an equitable mortgage of the equitable title.

March 10, 1852, complainant, owning one undivided third of the south west quarter of section 27, and of the north west quarter of section 34, in town 9 north of range 9 east, in Lapeer county, upon which was a saw mill, purchased the remaining two-thirds of George and Henry Niver, by an ordinary land contract, payable in annual payments, the last being a sum of fourteen hundred dol-

lars, payable June 1, 1855, in lumber, at market prices at East Saginaw. In June 1855, the legal estate which had been in George and Henry Niver, was vested in Peter C. Niver, by quit claim deed, dated June 5th, and recorded June 22d.

John Shafer, the complainant, was also the owner in fee of two quarter sections of lands immediately adjacent, and constituting, with the two quarter sections described, one section, namely, the south east quarter of section 28, and the north east quarter of section 33 of the same town and range.

June 1, 1854, complainant entered into a contract with Byron W. Clark, in the following terms:

"Memorandum of an agreement, made and entered into on this first day of June, A. D. 1854, by and between John Shafer, of Lapeer, Lapeer county, and State of Michigan, of the first part, and Byron W. Clark, of the city of Buffalo, in the State of New York, of the second part, Witnesseth, that the said Shafer agrees to sell and deliver to the said Clark, at Lower Saginaw, in the State of Michigan, in the months of May and June next, all the merchantable pine lumber manufactured at his mills in the township of Marathon, in the county of Lapeer aforesaid, but not to be less than one million feet, of which one-fourth is to be clear and fourths, at the following prices, subject to eastern inspection: clear at sixteen dollars and fifty cents per thousand feet, and common at six dollars and fifty cents per thousand feet. And the said Clark agrees to receive of the said Shafer the above mentioned lumber at Lower Saginaw aforesaid, at the time above mentioned, and pay him for the same at the rate of sixteen dollars and fifty cents per thousand feet for the clear, eleven dollars per thousand feet for the fourths, and six dollars and fifty cents per thousand feet for the common, upon the inspection, piling, and delivery of the lumber as aforesaid; and the said Clark agrees to advanc to the said Shafer the sum

of one thousand dollars on the execution of this agreement, by paying the same to Palmer Niver, to apply on a certain land contract made by George and Henry Niver to said Shafer, and also the further sum of two hundred dollars for each and every one hundred thousand feet sawed and properly put up at the said mills, in Marathon aforesaid, between the first of August next and the first of November next, and after that time and until the delivery of said lumber at Lower Saginaw, as above specified, to pay the said Shafer four hundred dollars per one hundred thousand feet, sawed and put up as aforesaid, at the mills aforesaid, upon the proper certificate of some person who may be selected or agreed upon by the said parties, and the balance, after deducting all advances which shall have been made, to be paid on the delivery of said lumber at Lower Saginaw as aforesaid; and it is mutually understood that the said parties hereto shall pay in equal portions the charge for inspection, and for the dockage of said lumber at Lower Saginaw as aforesaid, and that the said Shafer is to defray all expenses of sorting and piling, and the lumber is to be sorted and piled as the said Clark or his agent may direct, at a good and convenient point for shipping; and it is further agreed between the said parties hereto, that the said Shafer shall have at least two hundred thousand feet of said lumber sawed and put up as aforesaid at his said mills in Marathon, as aforesaid, in the month of August next; and the said Shafer further agrees to manufacture the said lumber of such thickness and dimensions as the said Clark or his agent may direct, or as Pascall Richardson of Tuscola, and John Pierson of Marathon, may say would be fair and right between the parties hereto.

"And it is further agreed that the said Clark is to be allowed interest upon all moneys advanced to said Shafer, until the delivery of said lumber at Lower Saginaw as aforesaid. It is further agreed by and between the parties

hereto, that if the said Shafer shall not be able to deliver the said lumber at Lower Saginaw, as aforesaid, by the time specified, that then and in that case, upon the payment of one thousand dollars to said Clark as his damages, the said Clark agrees to allow the said Shafer until the middle of October next, to deliver the same. And it is further mutually agreed by the parties to this contract, that the damages in consequence of the non-fulfillment of said contract by either party shall be and the same are fixed at the sum of ten thousand dollars. It is also mutually understood between the said parties hereto, that the said party of the first part shall take care of and pay the balance due upon the contract between himself and George and Henry Niver, upon the first day of June, 1855, being fourteen hundred dollars; and also to save harmless the said party of the second part from the payment of a certain mortgage made by the said Shafer and wife to James Reynolds, Seymour Foster, and Quincy Johnson, which it is understood shall be one of the conditions in the fulfillment of this contract. It is also further understood that all of the logs cut from the property known as John Shafer mill property, in the town of Marathon, and containing six hundred and forty acres, before the first of June next, or the lumber manufactured from the same, shall go to the said party of the second part under the terms and conditions of this contract, whether they may be sawed at Marathon, or in Saginaw. In witness whereof the said parties hereto have hereunto set their hands and seals, this 5th day of June, A. D. 1854.

JOHN SHAFER, [L. S.]

BYRON W. CLARK, [L. S.]"

To secure the performance of this contract, complainant executed a mortgage of the half section owned in his own right, and of the one-third of the other half section which was also in his name, and made an equitable mortgage of the two-thirds interest held under contract from George

and Henry Niver. The mortgage to Byron W. Clark was called a trust deed, and Clark gave back a lease to complainant. But the instrument being on its face a common law mortgage, no question can arise upon its legal character. This contract was transferred with the securities to Peter C. Niver, May 30, 1855.

As the transactions are somewhat complicated, the first question which arises is whether the land contract became absolutely forfeited by non-fulfillment at the day of payment. The parties had not treated time as essential before, and there is nothing peculiar in the contract itself, which removes it from the ordinary rule. We think, without dwelling upon the circumstances alleged to have made a tender or its equivalent, that the parties were not authorized to regard it as absolutely forfeited beyond redemption. In this respect, we think the decree below allowing a redemption of it was correct.

But the principal controversy has been concerning the extent of Peter C. Niver's mortgage claim, which covers the land under contract, as well as the rest. It was held below that complainant had fully performed, and therefore that the mortgage was cancelled. Defendants claim that he was in default, and is liable for damages, and that the decree in this respect is erroneous.

Clark's duty under the contract was to advance at its date one thousand dollars; to advance $200 upon every hundred thousand feet sawed and put up at the mill between August 1st and November, 1854, and $400 per hundred thousand feet on all sawed and put up thereafter, the balance being payable on delivery at Lower Saginaw. Shafer agreed to have two hundred thousand put up in August. In case he did not deliver the lumber in time at Lower Saginaw, he was at liberty, on paying $1000, to have the time postponed until the middle of October.

Clark advanced the first $1000, and also a further sum of $100, which was not due under the contract in August

1854. As there was not a hundred thousand feet put up at the mills in that season, he was not liable to advance any more before delivery. The failure of Shafer to have two hundred thousand feet put up at the mill in August, appears to have been regarded as material only in excusing Clark from making further advances. As the lumber was to be delivered at Lower Saginaw, it is difficult to perceive how it could affect the case otherwise. Neither Clark nor Shafer seem to have considered it as affecting in any way the important rights of the parties. It could not form any tangible basis for anything beyond nominal damages.

It appears from the testimony of Mr. Wattles, that in March or April, 1855, Clark and Shafer had a settlement upon the basis of ending the contract, and that Shafer agreed to pay Clark for his advances twenty-five hundred dollars. The amount then due was only the sum of $1100 and interest, for advances. But it is manifest from the testimony of Bonesteel, that Shafer did not expect to be able to carry out the contract, or to raise the $1000, upon which it was to be extended, and it is also in proof that the contract was likely to be a losing one to him. Clark, however, appears to have been anxious to get out of it also, probably from want of means, as there is some testimony bearing that way. At the end of May, it appeared that all the parties were in Buffalo, where Clark sold out to Peter C. Niver (through Henry Niver) for $2250, after first offering it to Shafer on the same terms. Before Niver purchased, Shafer represented the interest as worth $2500.

Looking at the whole case, we are of opinion that both Clark and Shafer regarded the contract as at an end in April, and that the only claim left was for damages. Although the agreement then made by way of compromise may have been deficient in some legal particulars, yet inasmuch as Shafer represented to Niver that Clark's rights were worth $2500, we think the purchase so made should

be protected. Nor do we think that Shafer could be permitted by his subsequent acts to avoid it. The contract having been terminated so far as it remained executory, the parties could not be required to hold themselves in readiness to perform it.

Whatever might have been the effect of Shafer's acts towards performance, had the contract remained open, they were evidently done without any *bona fide* expectation that they would be anticipated, and they were plainly designed to secure an unfair advantage. They can not, in the view we have taken, affect the case, and we are not called on to determine what they might have amounted to if material.

The decree below was erroneous in not allowing the mortgage lien of the defendant, Peter C. Niver. It must be reversed, and a new decree entered, establishing the amount of the mortgage against the complainant, executed to Byron W. Clark, June 1, 1854, on his estate in fee at $2500 and interest, from June 1, 1855, and the equitable lien on the land contracted, for the same debt, in addition to the balance of purchase money of fourteen hundred dollars and interest from June 1, 1855. Six months from July 11, 1861, are to be allowed for making payment, and in default, the land is to be sold, on the usual terms of mortgage sale, first selling the contracted property and applying the proceeds to the contract of sale, and the balance on the debt of $2500 and interest; and if there be any further deficiency in the latter debt, making it up by sale of so much as is necessary of the lands covered by the trust mortgage. The defendants are entitled to costs of both courts.

MARTIN CH. J. and CHRISTIANCY J., concurred.

MANNING J., did not sit in the case, having been counsel for one of the parties.