[No. 2233.  Decided March 8, 1897.]

The Commercial National Bank of Seattle, *Respondent,* v. Thomas Johnson, *Respondent,* James Dougan *et al., Appellants.*

Seattle and Montana Railway Company, *Respondent,* v. Thomas Johnson, *Respondent,* James Dougan *et al., Appellants.*

AWARD IN CONDEMNATION PROCEEDINGS — RIGHT OF MORTGAGEE TO SHARE — MORTGAGES — REFORMATION — FORECLOSURE UPON LAND IN TWO COUNTIES — JURISDICTION — ATTORNEY FEES.

A mortgagee, who has failed to assert his rights to moneys awarded for condemnation of a portion of the mortgaged premises until after the expiration of the period allowed for redemption from a sale under foreclosure of his mortgage, is estopped from asserting any claim thereto.

A mortgagee who has foreclosed and received a sheriff's deed to the premises is entitled, as against the mortgagor and junior claimants, to moneys subsequently paid for the appropriation of a portion of the mortgaged land, pursuant to condemnation proceedings instituted pending his acquisition of the full title.

A mortgage may be properly reformed in respect to correctly describing the date of maturity of the note secured.

An execution creditor is not entitled to share in an award paid as damages for the appropriation of real estate as against a mortgagee in possession of the property before suit by the execution creditor.

Two mortgages securing the same debt, but covering land in different counties, may properly be foreclosed in either county, as they should be regarded as one instrument.

An allowance of $800 attorney fees for the foreclosure of a mort-

gage for $11,000 will not be set aside, when the mortgage provides for a reasonable attorney's fee, although the notes themselves specify $300 as the attorney's fee.

Appeal from Superior Court, King County.—Hon. J. W. Langley, Judge.   Modified.

*Charles E. Patterson*, for appellant Dougan; *Allen & Powell*, for appellant Klosterman.

*L. H. Wheeler*, and *Burke, Shepard & Woods*, for respondent.

The opinion of the court was delivered by

Scott, C. J.—This is a consolidated action, and there are two appeals from the decree entered.   April 12, 1887, James McNaught and wife platted an addition to the city of Seattle, which was composed in part of tidelands to which they had no title.   Subsequently, by divers mesne conveyances from McNaught and wife, lots 14, 15, 24 and 25 of block 29 were conveyed to appellant James Dougan, said conveyances being by warranty deeds.   About three-fourths of the easterly part of said lots 24 and 25 were upland.   The remaining westerly parts and all of lots 14 and 15, lying in front and to the westward thereof, were tidelands. Thereafter, in July, 1888, the appellant Dougan and his wife, Mary Dougan, conveyed said lots to Thomas Johnson, and, to secure the sum of $4,000 of the purchase money, said Johnson and his wife, Ann Johnson, mortgaged said lots back to Dougan.   Excepting a row of piles which Dougan had placed along the side of said lots, and in front thereof, to deep water, they were unimproved.   Johnson purchased other lots adjacent to these, and built a wharf over all of them, and extending beyond to deep water.   This wharf was also used as a mill site, and upon certain

portions of said wharf, including parts of the upland and tideland parts of said lots, Johnson erected substantial buildings. This was the condition of the property in October, 1889, when Dougan commenced a foreclosure suit upon his said mortgage. All of the other parties hereto were made parties to said suit, and in September, 1890, a decree was rendered against Thomas Johnson, Ann Johnson and the Commercial National Bank (then defendant, under the name of Bank of North Seattle), and a certified copy filed in the county auditor's office for record. In March, 1891, a decree was entered against all the other defendants. By these decrees the mortgage debt of Dougan, amounting to about $4,000, was adjudged a first lien on all the mortgaged premises. In April, 1891, said lots 14, 15, 24 and 25 were sold under the decree, and Dougan became the purchaser for the full amount of his judgment; and, there being no redemption, in April, 1892, he received a sheriff's deed accordingly. After giving said mortgage to Dougan, Johnson and his wife gave a second mortgage to the plaintiff herein, the Commercial National Bank of Seattle. This mortgage covered the Dougan lots, and also, by specific description by metes and bounds, the tidelands in front of said lots and the adjoining lots, which were covered by the wharf aforesaid. This is one of the mortgages that plaintiff sought to foreclose in this action. In January, 1891, on execution of judgment for the sum of $2,000, obtained by appellant Klosterman against Thomas Johnson, all of said property was sold to said Klosterman; and in June, 1894, he received a sheriff's deed thereto accordingly.

In April, 1890, the city of Seattle commenced proceedings to extend a street known as " Water Street " through the property covered by the improvements of

Johnson, and to condemn a strip 100 feet wide across lots 14, 15, 16 and 17 (said last two lots being a part of those subsequently purchased by Johnson above referred to) of said block 29. Said strip was taken equally from lots 14 and 15 and lots 16 and 17 adjoining, and the parts taken were equal in value. The sum of $2,100 was awarded to Thomas Johnson for the portion of the improvements situated thereon. These proceedings were had under the city's charter, and in pursuance of the ordinance passed for establishing said street; and in August, 1890, the award was confirmed by a decree of the superior court. In September, 1890, the city paid said amount into court, and took possession of the strip of land and the wharf situated thereon, and ever since has used the same as a public street; and, with the consent of Johnson, the amount so paid into court was thereafter withdrawn by the Commercial National Bank, and applied by it on its mortgage indebtedness due from Johnson. Appellants Dougan were not served with any personal notice of said proceedings to condemn, and neither of them had any knowledge thereof until the same had been determined and the money paid to the bank, as aforesaid. Notice was given, however, by publication, in accordance with the charter.

In November, 1891, the Seattle & Montana Railway Company commenced condemnation proceedings in the superior court of King county, against Thomas Johnson *et al.*, to condemn a strip of land sixty feet wide in front of lots 14, 15, 16, 17, 22, 23, 24 and 25 of said block 29, for a right of way; and in February, 1892, the jury rendered a verdict in favor of all the respondents, including the appellants Dougan, assessing the damages that would result to all of the respondents interested in said tidelands and uplands

by reason of the taking and using of said right of way, at the sum of $3,000; and in September, 1892, said sum, with costs and interest, was paid into court, from which certain sums were thereafter drawn out by agreement of the parties. A judgment and decree of appropriation were duly entered upon the verdict. Something over $2,500 of the amount paid in remained in the registry of the court after deducting the sums paid out as aforesaid. The appellants Dougan filed a petition, asking that said sum be distributed, and one-half thereof be paid to them. Appellant Klosterman filed a petition, asking that the whole of said sum be awarded to him; and the Commercial National Bank, as successor to the Bank of North Seattle, filed its petition, asking that said sum be ordered paid to it. Pending the hearing of these proceedings, an order was entered consolidating said matters with the foreclosure suit brought by the bank aforesaid. In said foreclosure suit the bank also sought to foreclose a mortgage on real estate situated in Kittitas county, this state, given to it by Johnson and his wife, to secure the same indebtedness. The court having found in favor of the bank, these appeals are prosecuted.

All of the rights and conflicting claims of the respective parties are derived through the Johnsons. In their petition for a distribution of the funds, the appellants Dougan also asked that the sum of $1,050 additional be paid to them out of the moneys then in the registry of the court, in lieu of the share to which it is claimed they were entitled of the amount theretofore paid by the city in condemning a portion of said property for a street, said sum having been paid to the plaintiff bank. Said appellants contend that they were entitled to one-half of the sum paid in, and that they were not concluded in the proceedings, and that

the court was in a position to do equity to all the parties by decreeing that the mortgage debt from the Johnsons to the bank should be reinstated in that amount.    Their contentions upon this appeal relate to these two funds.    The appellant Klosterman contends that the court erred in assuming jurisdiction to foreclose the mortgage on the lands in Kittitas county; also, in finding that the mortgage (Exhibit B) was properly executed, and created a lien on the wharf and property in favor of the plaintiff, superior to his rights, and in directing a reformation of the mortgage. The remaining contentions upon the part of the appellant Klosterman relate to the findings of the court upon certain items, involving an accounting for care of the property, insurance money, and taxes, etc., and in failing to allow said appellant any of the moneys paid into the registry of the court in said condemnation proceedings; also, in finding that there was any amount due the plaintiff.

The appeal of appellants Dougan will be first considered.    Their various contentions with reference to the money paid in by the city will not be discussed in detail, as we are of the opinion that, whether or not the proceedings to condemn for the street as against them were valid, the relations of the other parties should not be disturbed at this time by requiring the bank to pay the money to them out of the present fund.    By referring to the dates above given, it will be observed that when the city began proceedings, in April, 1890, to condemn the strip for the street, Johnson was in possession, under the deed from the Dougans; and this was the condition in September following, when the city paid the money into court under the award, and took possession of the property condemned.    The premises were not sold to Dougan

under his mortgage foreclosure decree until April, 1891. At that time the strip condemned by the city was being used for a street, and he was bound to take notice of it. Had he then or previously applied for and obtained the value of the land taken, he would have been bound to account for it in case of a redemption from the sale; and the time for a redemption did not expire until in April, 1892. If the money had been refunded to him, it might have made some difference as to redeeming the property, with some of the parties who were entitled to redeem. Now, if he gets the money, he would get it as owner, the relations of the other parties would be materially altered, and possibly valuable rights lost beyond recovery, by reason of his failure to proceed before the time for redeeming the premises from the sale to him had expired. We are convinced that these appellants are not entitled to the relief asked as to this fund.

As to the other fund paid into court by the railroad company, a different state of facts is presented. When the proceedings were commenced by the railroad company to condemn, in November, 1891, the property had been sold to Dougan; and he received his deed from the sheriff prior to the time that the money was paid into court, which was in September, 1892. This fund, excepting several small amounts paid out by agreement of the parties, is yet in court, awaiting a final order of distribution. The rights of all the parties are derived through the Johnsons, and the only superior claim, if any, that could be asserted, would be upon the part of the state as the owner of the tidelands. But the state is making no claim thereto, and none of the parties claim under the state. The right of the upland owner to erect a wharf, and extend the same on adjacent tidelands, was distinctly recognized

by a territorial statute, which may be found in 1 Hill's
Code, § 2136; and, although just what rights the shore
owner obtained under this statute may never have
been distinctly determined by the court, we regard it
as immaterial to this controversy, for the proceedings
to condemn were directed against Johnson and the
claimants under him, and the damages to the upland
were included in the award, as well as to the tidelands
and the improvements thereon.   Under the facts
shown, one-half of this award was based upon the
damages to the property claimed by Dougan under
his mortgage purchase; and, as his claims thereto
were prior to those of any of the other parties, we are
unable to discover any reason why one-half of the
moneys should not be distributed to him, and the
judgment rendered thereon in the lower court should
be reversed or modified to that extent.

As to Klosterman's appeal and his claim to a
part of the funds, it will be observed that his rights
accrued after the mortgage on the property in ques-
tion had been given to the bank.   There was no error
in permitting a reformation of the mortgage to cor-
rectly describe the note as falling due in sixty days,
instead of thirty days.   He claims that this was not a
valid mortgage upon the tidelands therein described,
and did not create any lien upon the wharf built
thereon, for the reason that the wharf should be
treated as personalty, and the mortgage was not exe-
cuted as a chattel mortgage.   But the mortgage also
covered a part of the upland, and Klosterman levied
upon the whole property as real estate, and purchased
it as such.   Whatever the legal rights of the parties
were as against the state, or whether a part of the
property was personal, instead of real property, is im-
material here.   The award was paid as damages to

real estate.   Klosterman had notice of the rights of
the other parties.   The bank was in possession of the
property before his suit was begun, and whatever
rights he obtained were subject to those of the bank
and the Dougans.   Consequently, he was entitled to
no part of the award.

One of his principal contentions is that the superior
court of King county has no jurisdiction to foreclose
the mortgage on the land in Kittitas county.   But,
while a suit to foreclose a real estate mortgage is local,
under the provisions of our statute a mortgage cover-
ing lands in two or more counties may be foreclosed
in any county in which part of the lands lie.   The
mortgage upon the lands in Kittitas county secured
the same debt that was secured by the King county
mortgage, and although it was given at a different
time, and included other debts, yet, for the purpose of
a foreclosure, we are of the opinion that the two mort-
gages should be regarded as one instrument, and that
the superior court of either county had jurisdiction to
foreclose both of them.   Jones, Mortgages, (4th ed.)
§ 356.   A different rule would certainly be a most
inconvenient one, for to require the mortgagee to pro-
ceed in each county separately would make the pro-
ceedings much more involved, as well as expensive.
They could not well be both prosecuted at the same
time, for one must be in a measure subservient to the
other, and be prosecuted with reference to the other,
or the proceedings would inevitably conflict.   Sub-
ordinate lienors upon the Kittitas county lands would
be interested in having the King county lands sold
first, and subordinate lienors upon the King county
lands would have the reverse interest, and each would
be entitled to a hearing, and to have their interests
adjusted.

Under the view we have taken of the record, it will not be necessary to discuss the numerous items entering into the account in detail, in consequence of a stipulation which was entered into between the parties, and which is set forth in substance in a finding of the court, viz.:

"Both sides of said account, as hereinabove stated and allowed, and the computation of interest included therein, have been agreed upon between the plaintiff, the defendants Thomas Johnson and Ann Johnson, his wife, and the defendant John Klosterman, as correct and complete, in respect to all the items thereof; and the adjustment and allowance thereof, as hereinabove set forth, have been consented to by said defendants, excepting that said Klosterman has not consented, but objects to the allowance of sundry debit items, aggregating the sum of $110.85 (included in the above specified sum of $3,413.32), which items were charged by said bank against said Johnson, and have been hereinabove allowed by the court."

Klosterman contends that the agreement referred to did not cover the application and allowance of the items, but only related to the computation of interest thereon, etc. But the finding clearly states that the allowance was agreed to, with the exception of the items stated. As to these, the proof has not all been brought here; and it appears that they were properly allowed, under the evidence that is in the record. The matter of the accounting is also probably rendered of less importance in consequence of the decision we have come to with reference to the fund in the appeal by Dougan.

It is also contended that the court erred in allowing an attorney's fee of $800, as the notes each specified $100, and there were but three of them. This would have been conclusive, of course, in an independent

35 — 16 WASH.

action upon the notes; but the mortgages each provided for the allowance of a reasonable attorney's fee, and the finding of the court that this sum was reasonable must be sustained.

Another contention is that the bank should have been charged with $3,000, the amount of insurance which it is claimed was negligently allowed to lapse just before a fire occurred, burning a part of the property. But we find nothing in the evidence brought here to sustain this claim, and the findings of the court upon the accounting as to the amounts, both allowed and disallowed, are supported by the evidence in the record, and are sustained.

The decree as to Klosterman will be affirmed.

REAVIS, ANDERS and DUNBAR, JJ., concur.

GORDON, J., not sitting.