[No. 9567. Department One. November 28, 1911.]

EMPIRE STATE SURETY COMPANY, *Respondent*, v.
O. H. BALLOU *et al.*, *Appellants*, OTTO H. SIEFERT
*et al.*, *Respondents.*[1]

INDEMNITY—LIABILITY — DISCHARGE — PARTNERS AS PRINCIPALS—DEPOSIT AS LIMITATION ON LIABILITY. Where a surety company guaranteed the construction of a building by a copartnership, taking as indemnity a deposit of $1,000 in money from one of the partners, his liability is not limited to the deposit, as all the partners are liable as principals; hence use of the deposit to discharge claims does not release the partner making the deposit from further liability.

[1]Reported in 118 Pac. 923.

HUSBAND AND WIFE—COMMUNITY PROPERTY—TITLE IN TRUST—
DEED OF TRUSTEE. The title to land agreed to be conveyed to a
builder in part consideration for his work, does not pass to the com-
munity consisting of himself and wife, before deed; and being held
in trust, the deed of the trustee at request of the husband passes
title without any conveyance by the wife.

MORTGAGES — INDEMNITY MORTGAGE — CONSIDERATION. Where a
surety company guaranteeing a building contract had already ad-
vanced money or subsequently advanced it, a deed of property given
as indemnity is supported by a sufficient consideration, although it
was volunteered.

MORTGAGES—FORECLOSURE—VENUE—JURISDICTION. Under Rem. &
Bal. Code, § 1016, providing that a mortgagee may foreclose in the
superior court of the county where the land or some part of it
lies, two trust deeds of lands in two counties may be foreclosed by
an action in either county.

PRINCIPAL AND SURETY—RIGHTS OF SURETY—EXHAUSTION OF REM-
EDY AGAINST PRINCIPALS. Where the principals gave indemnity to
a surety company guaranteeing a building contract, the surety com-
pany has the right to exhaust the indemnity and liability of the
principals before recourse to the liability of a volunteer surety for
the principals.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered February 24, 1911, in favor
of the plaintiff, after a trial on the merits before the court
without a jury, in an action to enforce an indemnity agree-
ment and to foreclose certain trust deeds. Affirmed.

*Jas. W. Carr*, for appellants.

*John P. Hartman*, for respondent Empire State Surety
Company.

*Gill, Hoyt & Frye* and *R. L. Blewett*, for respondent
Hink.

MOUNT, J.—The plaintiff brought this action to recover
against O. H. Ballou, Otto Siefert, and Elmer Weston, as
copartners, the sum of $2,547.35, with interest, attorney's
fees, and disbursements upon a guaranty agreement; and
also to foreclose two trust deeds, which were alleged to be
mortgages to secure the plaintiff against loss upon a surety

bond. The other defendants were alleged to claim some interest in the property sought to be foreclosed, except Otto Hink, who was a surety or indemnitor to the plaintiff. Upon the trial of the case, the court found that the defendants were indebted in the sum named, and that the two deeds were in fact mortgages, and entered a decree of foreclosure. The defendants O. H. Ballou and wife have appealed.

It appears that, in December, 1908, the appellant Ballou, under the trade name of "Building Company of San Francisco," had agreed to sell to John Payne and wife a certain lot in the city of Seattle, and to erect a building thereon within a given time for a consideration of some $33,000, $20,000 of which was to be paid in cash, $7,500 was to be paid by real estate in Port Townsend, Jefferson county, Washington, and the remainder by mortgage upon the premises which were to be improved. The appellant Ballou, under the name of the building company, agreed to furnish an indemnity bond to Payne and wife for the completion of the building free from liens. On January 21, 1909, O. H. Ballou, Otto Siefert, and Elmer Weston entered into a written agreement of copartnership for the purpose of constructing the building above named at a cost of $18,000. In these articles of copartnership, it was agreed that each should share the profits and losses equally, but that the bond to be furnished should be paid for, one-half by Ballou and one-half by Siefert and Weston.

On January 20, defendant Ballou, under the name of the Building Company of San Francisco, applied to the plaintiff for a surety bond in the sum of $15,000, and upon the same day, each of the partners above named and one Otto Hink entered into an agreement to indemnify the surety company against loss. One of the trust deeds in suit was executed by Siefert and wife, and delivered to the surety company as indemnity, and at the same time $1,000 in money was deposited with the surety company by Ballou for the same purpose. The surety company thereupon issued the bond

guaranteeing the construction of the building above named, and against liens, etc. The partnership above named thereupon entered upon the construction of the building, but before it was completed, Siefert and Weston seem to have abandoned the work and Ballou proceeded to the completion of the building. In the meantime, the surety company advanced $3,547.35 in the payment of liens and claims, and $700 for attorney's fees and other costs in regard thereto. The surety company used the $1,000 deposited by Ballou in part payment of these claims. So that the actual outlay of the surety company in money was $2,547.35 and the other costs. During the construction of the building, Mr. and Mrs. Payne, at the request of Ballou, executed a trust deed of the Port Townsend property to the plaintiff as additional indemnity. Later this action was begun by the surety company to recover against all of the partners, and to foreclose the two trust deeds named.

It is argued by the appellant Ballou that he was not an original guarantor, but was merely a guarantor with a limited liability, and that when the surety company used the $1,000 which he had advanced, his liability as a guarantor ceased, and the company could not enforce further liability against him. He testified, in substance, that his codefendants, Siefert and Weston, undertook to obtain the surety company bond, and in order to do so, offered certain property by way of security to indemnify the surety company against loss, but that the surety company was not satisfied with the property offered by Siefert and Weston, and that appellant thereupon deposited with the surety company $1,000 in money to satisfy a demand for more security.

The fallacy of his position is that the appellant Ballou was not only a surety or guarantor as to the security which he gave for Siefert and Weston, but he was also a principal for whom the bond was given. As between the surety company and the partnership consisting of Ballou, Siefert, and Weston, each of the partners was liable to the surety

company for the whole loss. There is nothing in the evidence to show that the surety company accepted the deposit from Ballou for Siefert and Weston, and released, or intended to release, the principals, or any of them, from liability which might thereafter accrue upon the bond. There was, therefore, no limited liability as between the surety company and Ballou.

Appellants next argue that the transfer of the Port Townsend property to the surety company was without consideration, and that the property was community property of himself and wife, and that the wife never consented to the transfer. The evidence shows that the legal title of this property never passed into the community of Ballou and wife. The property was deeded directly by Payne and wife to the surety company, in trust. It was, therefore, not necessary for either Ballou or his wife to join in the conveyance. It is true that the surety company did not demand the additional security, and that Ballou voluntarily caused the property to be deeded to the surety company, to make good "any loss or deficit arising under a certain contract made between myself [the building company of San Francisco] and John and Ruth Payne only." This contract was the one to build the building. The fact that the surety company accepted the deed when they had already advanced money or subsequently advanced it, was a sufficient consideration.

Appellants next argue that the superior court of King county, where the action was brought, had no jurisdiction over the Jefferson county real estate. The statute provides that a mortgagee "may proceed in the superior court of the county where the land or some part thereof lies, to foreclose the equity of redemption contained in the mortgage." Rem. & Bal. Code, § 1016. In *Commercial Nat. Bank v. Johnson*, 16 Wash. 536, 48 Pac. 267, it was held that, where a mortgage covers land lying in two counties, foreclosure may be had in either county, and the reasons therefor

are there stated. The superior court of King county therefore had jurisdiction.

Appellants lastly argue that the court erred in not rendering a judgment against Otto Hink. It is apparent that Mr. Hink was a volunteer surety without interest in the contract. It was therefore just that the partnership property and the property of each of the partners should be made to respond before recourse was had upon Mr. Hink. 23 Cyc. 234; 27 Am. & Eng. Ency. Law (2d ed.), 463. If it is a fact, as appellants apparently claim, that Hink was a surety for Siefert and Weston to appellant, that fact does not clearly appear, and if it did, it would not affect the right of the surety company to foreclose the mortgage in this action.

Judgment affirmed.

DUNBAR, C. J., PARKER, GOSE, and FULLERTON, JJ., concur.