[No. 7694.  Decided December 24, 1908.]

H. S. SPEDDEN et al., Respondents, v. A. E. SYKES et al.,
Appellants.[1]

APPEAL—BRIEFS—ASSIGNMENT OF ERRORS—SUFFICIENCY.  While
errors not pointed out with reasonable clearness will not be con-
sidered, a brief will not be struck for failure to assign errors, where
the alleged errors are set forth with the pages of the record showing
the various rulings, and rule eight is substantially complied with.

APPEAL—BRIEFS—TIME FOR FILING—DISMISSAL.  A motion to dis-
miss an appeal for failure to file briefs in time will be determined
by the status of the case at the time the motion is heard.

VENDOR AND PURCHASER—RESCISSION BY VENDOR—OPTION—FORFEIT-
URE OF PAYMENTS—EXECUTION OF OPTION—ACCEPTANCE OF MORTGAGE.
The forfeiture of preliminary payments under an optional contract
for the purchase of land, of which time is of the essence, are waived
by the execution of a deed and the acceptance of notes secured by a
mortgage, pursuant to a clause of the option agreement providing
therefor, even though the mortgage was insufficient in form, where
there was no fraud and no intervening rights of third parties, and
the parties were proceeding in good faith to carry out the contract;
since the option may be considered executed, and forfeitures are not
favored.

[1]Reported in 98 Pac. 752.

MORTGAGES—VALIDITY—FORM. Insufficiency in the form of a mortgage does not affect its validity as between the parties.

VENDOR AND PURCHASER—RESCISSION BY VENDOR—WAIVER OF FORFEITURE. The forfeiture of payments made under a contract for the purchase of land cannot be claimed by a vendor seeking rescission after acceptance of notes secured by an informal or insufficient mortgage, where no demand was made for a formally executed mortgage.

MORTGAGES—VALIDITY—FORM. A mortgage is not void merely because it fails to state the amount of the debt which it was given to secure.

Appeal from a judgment of the superior court for Stevens county, Chapman, J., entered December 10, 1907, upon findings in favor of the plaintiffs, in an action by vendors for the rescission of a contract to purchase land. Reversed.

*L. H. Prather*, for appellants.
*Judson & Rochford*, for respondents.

CHADWICK, J.—Respondents have moved the court that this appeal be dismissed, for the reasons (1) that appellants' brief contains no assignments of error, and (2) that the briefs were not filed within time. To sustain the first ground *Haugh v. Tacoma*, 12 Wash. 386, 41 Pac. 173, 43 Pac. 37, is relied upon. This case has been distinguished in the later cases of *Johnston v. Gerry*, 34 Wash. 524, 76 Pac. 258, 77 Pac. 503, and *Crowley v. McDonough*, 30 Wash. 57, 70 Pac. 261; and upon the authority of these cases the first ground of the motion is not well taken. It has also been held that a motion to dismiss an appeal for failure to file briefs in time must be determined by the status of the case at the time the motion is heard. *Skagit R. & Lumber Co. v. Cole*, 1 Wash. 330, 26 Pac. 535. The motion to dismiss the appeal is denied.

From the pleadings and findings of fact, it appears that, on the 9th day of April, 1906, the parties entered into a written contract whereby defendant Sykes was given an option to purchase certain mining claims, together with all plaintiffs' interest in certain other property, situate in Stevens county,

Washington. Upon the execution of the contract, defendant paid the sum of $5,000. The contract provided for the payment of the further sums of $7,500 on or before October 1, 1906, and $7,500 on or before April 1, 1907, and that a deed should be executed upon the demand of the defendant, provided that upon delivery of the deed defendant would execute a note for the unpaid balance, together with a mortgage upon the property conveyed. It was also agreed that,

"If in any event said party of the second part, his successors or assigns, shall fail to make the payments as herein provided, then this contract may be forfeited at the option of the parties of the first part, and upon the exercise of such option the party of the second part, his successors or assigns, shall forfeit to said parties of the first part any and all sums paid hereunder, which said sums it is hereby agreed shall be considered liquidated damages for such breach, and thereupon the said parties of the first part shall be entitled to the immediate possession of the said premises above described."

Defendant went into possession of the property under the terms of his option, and at some time prior to October 6, 1906, at his request, plaintiffs conveyed all of the property described in the contract to the defendant Chewelah Copper Queen Mining Company. On September 17, 1906, the defendant mining company executed and delivered to plaintiffs its two promissory notes for the sum of $7,500 each, the one due October 1, 1906, and the other April 1, 1907. At the same time, and for the purpose of securing the payment of the said notes according to their tenor and effect, the defendant mining company made and delivered to plaintiffs a mortgage in form as follows:

"*This Indenture Witnesseth,* That the mortgagor, Chewelah Copper Queen Mining Company, of the town of Chewelah, in the county of Stevens, and state of Washington, mortgages and warrants to H. S. Spedden, Eugene Spedden, E. M. Spedden, C. C. Bunker and B. J. Bunker, of the town of Chewelah, county of Stevens, and state of Washington, to secure the payment of two promissory notes executed by Chewelah Copper Queen Mining Company, bearing even date

herewith, payable to the order of H. S. Spedden, Eugene Spedden, E. M. Spedden, C. C. Bunker and B. J. Bunker, the following described real estate, to wit, the Copper Queen, Baby S., Hillside, Northview, Copper Chief, Millsite and Copper Crown, all being situated in the Chewelah mining district, Stevens county, Washington; and also their interest in and to the northwest quarter of the southeast quarter and the southwest quarter of the northeast quarter of section twenty-nine (29) in township thirty-three (33) north of range forty-one (41) E. W. M., situated in the county of Stevens, in the state of Washington, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state.

"Dated this 17th day of September, A. D. 1906.

"Chewelah Copper Queen Mining Co.   (Seal)

"By Thos. D. Schall, President,

"J. H. S. Gifford, Secretary.

"State of Minnesota, County of Hennepin—ss.

"I, A. D. Smith, in and for said county in the state aforesaid, do hereby certify that Thos. D. Schall, president, and J. H. S. Gifford, secretary, for the Chewelah Copper Queen Mining Company, personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this 20th day of September, 1906, in person, and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

"Given under my hand and seal this 20th day of September, A. D. 1906.

"(Notarial Seal)                    "A. D. Smith,

"Notary Public, Hennepin County, Minnesota."

Plaintiffs received the mortgage and placed it of record, believing, as they say, that it was a "mortgage in fact, sufficient in form under the laws of the state of Washington to create a lien upon the property therein described, to secure the payment of the two promissory notes, each for the sum of $7,500, at the time in each note stated." It is also alleged in the complaint that the deed to the defendant company was procured and the mortgage received by plaintiffs because of the fraudulent representations of the defendants,

in that plaintiffs being ignorant of the ways of business were induced to believe the mortgage was "a mortgage in truth and in fact, whereas· said pretended mortgage was at the time of its delivery, and now is, worthless under the laws of the state of Washington." All of this is denied by defendants, and the trial court found that there was no fraudulent intent. The promissory notes were not paid at the time stipulated, and this action was brought for the cancellation of the deed and forfeiture of the rights of the defendants under the option contract. From a decree in favor of plaintiffs, the defendants have appealed.

The case is thus reduced to an action for the forfeiture of an option agreement for the purchase of land. Under well settled principles of the law, a vendor may reserve the right to forfeit the contract and retain the amounts paid by the vendee on the purchase price. If this were all there was to this case, its solution would involve no effort. But where, not only under the contract but by subsequent agreement of the parties, notes are given for the payment of the purchase price, which in the absence of any agreement to the contrary would extend the time of payment over the period of limitation fixed by the statute for recovery upon overdue contracts, thus eliminating the implication or express understanding, as the case may be, that time is the essence of the contract, a more difficult question is presented, for it is upon this theory that forfeitures are sustained. 1 Pomeroy's Equity, § 445; *Clark v. Lyons,* 25 Ill. 105; *Shafer v. Niver,* 9 Mich. 253; *Linscott v. Buck,* 33 Me. 530.

While appellants undoubtedly had the right to reserve the remedy of forfeiture, it may be seriously questioned whether they have not waived it by accepting the promissory notes of the mining company. The contract ceased to be executory and became an executed one. This theory is consistent with the express terms of the contract. It was agreed,

"By and between the parties hereto that at any time the party of the second part may desire the conveyance of said

property the said parties of the first part will convey the same to him, or to his successors and assigns,. by a good and sufficient mining deed free and clear of all liens and incumbrances accruing prior to the date hereof; providing, that upon the delivery of said deed in accordance herewith the said party of the second part, his successors or assigns, will execute a note to the parties of the first part for the amount remaining unpaid under terms hereof when the request for such deed shall be made, secured by a mortgage upon the above described property."

This court has held the general doctrine that forfeitures are not favored in the law, and that courts should promptly seize upon any circumstance arising out of the contract or relations of the parties that would indicate an election or an agreement to waive the harsh and at times unjust remedy of forfeiture, a remedy which is oftentimes too freely granted by those who have taken no account of the misfortunes and disappointments which conditions, unforeseen and beyond a party's control, have raised as a bar to performance, however honest may be his intent. *Whiting v. Doughton*, 31 Wash. 327, 71 Pac. 1026. Equity will enforce forfeitures when it is the contract of the parties that it shall be so. But before making its decree it will consider every agreement, every declaration, and every relation of the parties arising out of the contract; and if there be anything that warrants a finding that the parties have resolved anew, it will so decree.

But it is insisted that the mortgage tendered and received by the plaintiffs was void and of no effect. It is true that the mortgage does not literally comply with the form suggested by the legislature of this state (Bal. Code, § 4522; P. C. § 4454), and its acknowledgment is informal; but we do not understand that courts should be overtechnical in construing the acts of original parties to a contract. The trial court expressly found,

"That the said defendants did not, at any time, make to the said plaintiffs any false or fraudulent representations as to the validity of said purported mortgage and said notes, or any or either of them."

The parties proceeded in equal good faith to carry out their contract. The one has tendered and the other received a mortgage insufficient in form to meet the accepted definitions of the term. No rights of third parties have intervened, and it must be admitted that the instrument is the acknowledgment of an obligation and an agreement that certain property shall be held to satisfy the debt whatever it may be. Is it any less a mortgage, as between the parties, than one drawn with all the forms and sanctions of the law? We think not. Admitting its lack of form, it was susceptible of being reformed in a court of equity. The appellant mining company could not have denied its intent and obligation. *Commercial Nat. Bank v. Johnson,* 16 Wash. 536, 48 Pac. 267; *Land Mtg. Bank v. Nicholson,* 24 Wash. 258, 64 Pac. 156.

If all these things were not true, there is another principle that precludes a recovery in this case; and that is that it was the privilege, and we may say the duty, of respondents to demand a more formally executed mortgage, if they so desired, at the time the one under consideration was tendered. It is no answer to this proposition to say that appellants were ignorant and unskilled in matters of business, and were overreached by respondents. That allegation fell with the finding that there was no fraud. Having accepted the mortgage, they are bound, in the absence of intervening rights, to rely upon it, for it carries with it a right of redemption in appellants which is valuable to them and cannot be defeated without proper proceedings and a day in court.

From the record it is clear that the court below held the mortgage void because it did not state the amount of the debt, and that the mortgage was not executed by the corporation nor acknowledged by the corporation or its officers. The first ground is untenable. Jones, Mortgages (6th ed.), § 64; *Robinson v. Williams,* 22 N. Y. 380; 27 Cyc. 1056. The second ground needs no further discussion. The hold-

ing of the court is that the complaint in this case does not state a cause of action, and that the conclusions of law are not warranted by the facts found.

The case will be reversed, and remanded with instructions to the lower court to dismiss this action without prejudice to the right of respondents to bring an action to foreclose their mortgage upon the property.

RUDKIN, FULLERTON, CROW, and DUNBAR, JJ., concur.

HADLEY, C. J., and MOUNT, J., took no part.