[No. 2146–3. Division Three. June 15, 1978.]

LOUIS P. ESMIEU, ET AL, *Appellants*, v. JACK HSIEH, ET AL, *Respondents*.

---

*LeSourd, Patten, Fleming & Hartung, Leon C. Misterek, Edwards, Wetherall & Barbieri, Malcolm L. Edwards,* and *Robert G. Austin,* for appellants.

*Leavy, Taber, Schultz, Bergdahl & Sweeney, John G. Schultz,* and *Andrew C. Bohrnsen,* for respondents.

FARIS, J.*—Plaintiffs Esmieus, both as individuals and

---

*Judge Philip H. Faris is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

through a family trust, own over 15,700 acres of agricultural land in Walla Walla County. Desiring to generate more family income by diversifying their holdings, they made two agreements with defendant Jack Hsieh.[1] The first, of December 1973, was to exchange about 9,000 acres (Tract A) for other real estate which Hsieh would provide. The second, of March 1974, a lease and option to exchange agreement (the Agreement), is at issue in this case. It provided for Esmieus to lease another 6,700 acres (Tracts B and C) to Hsieh for approximately 20 years, with rent increases upon specified occurrences, and provided that Hsieh have an option to purchase Tracts B and C by exchanging other real estate with specified values. Hsieh was also, by securing water permits and performing other necessary tasks, to provide irrigation for the leased land. Esmieus were required to cooperate fully in this endeavor. Provision was also made for 60–day notice of claimed default, and for termination if default should remain uncured.

Because of certain terms of the family trust, all the exchange provisions were subject to court approval. This caused some prior litigation: the Superior Court, on June 27, 1974, approved the principle of an exchange but reserved for later approval the specific property to be exchanged for trust property. This court ordered that all the Superior Court's orders entered after November 18, 1974, be vacated on due process grounds. *Esmieu v. Schrag*, 15 Wn. App. 260, 548 P.2d 581 (1976), *aff'd*, 88 Wn.2d 490, 563 P.2d 203 (1977). This did not affect the order of June 27, which still provides the basis for the Agreement involved in this case.

Tracts A, B, and C were subject to leases to Charles Maiden, expiring in 1978. The Agreement required Esmieus to negotiate promptly for termination of the leases and to

---

[1]Although the two agreements were assigned and reassigned, Hsieh remains the real party in interest, and will be referred to in this opinion as the sole defendant.

bear all expenses so Hsieh could take possession of the land as soon as possible. Hsieh, pursuant to the Agreement, negotiated directly with Charles Maiden for a partial termination of the Maiden leases. He delivered it to Esmieus' then attorney, for their signature. Differences had arisen among the Esmieus, some of whom opposed the Hsieh agreement. By the time Hsieh provided the lease termination agreement to Esmieus' attorney, all were agreed in desiring not to comply with the Agreement. Although they had actually signed the lease termination which Hsieh had negotiated with Maiden, they left it with their attorney and told Hsieh, when he occasionally inquired, that it still was unsigned.

Esmieus' failure to complete the Maiden lease termination effectively blocked Hsieh's gaining possession of the land, so he could not fulfill the final requirement for the water permits, which was to provide a construction schedule. The Agreement, which Esmieus had prepared, specifically highlighted the importance of obtaining irrigation water; it is no exaggeration to say that it was the keystone of the entire transaction. The record fully supports the trial court's finding that Hsieh "conscientiously and vigorously attempted to comply . . . with regard to obtaining water permits." His efforts were obstructed and ultimately rendered futile by Esmieus' failure to place him in possession by refusing to cooperate in terminating the Maiden leases. Without possession he could not meet all the requirements for obtaining water permits. He had negotiated an agreement to terminate the Maiden leases, and had even agreed to make a $25,000 cash payment himself. Esmieus signed the termination, but denied having done so and did not permit it to be delivered.[2] Hsieh, frustrated in his considerable efforts to complete the irrigation plans, finally abandoned them. The permit applications eventually were canceled in April 1975.

---

[2] In answering an interrogatory prior to trial, they denied ever having received or signed it.

Hsieh paid the rent installment of October 1, 1974. Due to uneasiness arising from Esmieus' procrastination, the January 1, 1975, rent payment was made to Esmieus' attorney, and was conditional.[3] Esmieus gave notice of default for nonpayment of rent and failure to obtain irrigation. After 60 days they took the position that the Agreement was terminated by the alleged defaults' remaining uncured. In June 1975, they leased Tract A to International Pelleting Corp. (IPC) for 40 years. Thereafter, Esmieus brought this action to quiet title; defendant Hsieh counterclaimed for specific performance of the Agreement and for damages. The trial court denied Esmieus' claim. It ordered specific performance, but denied damages as being speculative. This appeal followed.

Esmieus sought court assistance to enforce forfeiture of the Agreement. They urge that their covenant to cooperate in obtaining water permits is independent of Hsieh's covenants to pay rent and secure water permits; therefore, they argue, even if their alleged failure to terminate the Maiden lease constituted a breach of the agreement, they were still entitled to cancel the lease and receive a judgment quieting their title. Hsieh asserts that Esmieus' breach, which prevented him from getting the permits, amounted to breach of the implied covenant of quiet enjoyment. He argues that that implied covenant and his own covenants are dependent, so that his failure to pay rent is excused.

 Esmieus first claim that since Hsieh's payment of the January rent was conditional, it did not constitute a valid tender such as to excuse his performance.[4] In light of our discussion below, we need not decide if the January

---

[3]There is no evidence, however, which suggests anything but that the condition was that Esmieus faithfully perform their obligations under the Agreement.

[4]Esmieus rely on *American Sheet Metal Works, Inc. v. Haynes*, 67 Wn.2d 153, 407 P.2d 429 (1965), but that case is not in point, since it involved a payment into court of an amount less than the contract price, the amount claimed due, and the amount finally adjudged to be due. It was, however, offered as "payment in full."

payment constituted sufficient tender of performance since the trial court found, and we agree, that Hsieh's default, if any, on this one payment was insufficient to allow Esmieus to terminate the Agreement. Equity abhors a forfeiture, *Port of Walla Walla v. Sun–Glo Producers, Inc.,* 8 Wn. App. 51, 504 P.2d 324 (1972); conditions of forfeiture must be substantial before they will be enforced in equity.

The main question is whether Hsieh's obligations to pay rent and secure water permits are independent of Esmieus' obligation to cooperate in obtaining water permits. It has long been the rule that, to determine whether covenants be dependent or independent, the court must look to the contract as a whole to discover the intent of the parties. *Toellner v. McGinnis,* 55 Wash. 430, 104 P. 641 (1909). The evidence indicates, and the trial court found, that Hsieh had an overall development plan covering Tracts A, B, and C. This is reflected in the Agreement, which specifically refers to Hsieh's overall plan and to the parties' prior agreement regarding Tract A. Considering also that the land was virtually worthless without irrigation, we hold that Hsieh's covenants to secure irrigation and to pay rent were dependent upon Esmieus' covenants to cooperate in securing irrigation and the termination of Maiden's leasehold as soon as possible.

Sometime after January 1974, but before April 1974, the Esmieus' agreement amongst themselves to block Hsieh's development and to avoid the Agreement ripened into a breach. While enthusiasm is not required in performing contractual obligations, Esmieus' deliberate frustration of the basic purpose behind the Agreement also amounted to breach of the implied covenant of quiet enjoyment, which is contained in every lease, *Washington Chocolate Co. v. Kent,* 28 Wn.2d 448, 183 P.2d 514 (1947). Esmieus essentially prevented Hsieh from gaining possession of the land, to which he was entitled under the Agreement, and this breached the implied covenant. *Cherberg v. Peoples Nat'l Bank,* 15 Wn. App. 336, 549 P.2d 46 (1976), *rev'd on other grounds,* 88 Wn.2d 595, 564 P.2d 1137

(1977). Breach of this covenant not only excuses Hsieh's performance of his obligations with respect to irrigation water, but it also excuses any further obligation on his part to pay rent. *Income Properties Inv. Corp. v. Trefethen,* 155 Wash. 493, 284 P. 782 (1930); *McLeod v. Russell,* 59 Wash. 676, 110 P. 626 (1910).

Esmieus' activities affirmatively caused Hsieh's failure to perform his contractual obligations. Esmieus consequently have no cause of action based on Hsieh's nonperformance. *Hydraulic Supply Mfg. Co. v. Mardesich,* 57 Wn.2d 104, 352 P.2d 1023 (1960); *Refrigeration Eng'r Co. v. McKay,* 4 Wn. App. 963, 486 P.2d 304 (1971). Further, Hsieh's default, if any, on the January rent is not sufficient to allow Esmieus to terminate the Agreement. *See John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969).

Esmieus argue that Hsieh is not entitled to a decree of specific performance because he was in unexcused default of his obligations under the Agreement. As we have noted, Hsieh's default in January rent was merely technical, and was due to the uneasiness he already felt from Esmieus' failure to place him in possession. The remedy is equitable. In view of Hsieh's overall development plan, and his vigorous attempts to fulfill his own obligations, specific performance is the only equitable solution.

▮ The trial court, in ordering specific performance, also ordered Esmieus to cancel IPC's 40-year lease. Esmieus complain that the court had no power to do this, since IPC was not a party to the action. As the court stated in *Income Properties Inv. Corp. v. Trefethen, supra* at 506:

It is well settled that, when the conditions and circumstances are such as to warrant the interference of equity, equity will assume jurisdiction for all purposes and give such relief as may be required.

The Agreement referred to the offer to exchange Tract A, and further provided that Esmieus should not assign away any interest in any of the land involved, including Tract A. The trial court's order says nothing about the validity of

the lease as between Esmieus and IPC. It merely orders, in resolving the dispute between Esmieus and Hsieh, that the Esmieus negotiate a termination of this lease, which conflicts with the Agreement. It was not necessary, under CR 19, that IPC be joined since it is not "so situated that the disposition of the action in [its] absence may (A) as a practical matter impair or impede [its] ability to protect that interest". The decree in no way affects any rights IPC may have; to the contrary it recognizes them. *See In re Estate of Wilson,* 50 Wn.2d 840, 315 P.2d 287 (1957).

The trial court's judgment is affirmed.

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied July 26, 1978.

Review granted by Supreme Court December 14, 1978.