[No. 3278-7-III.   Division Three.   March 25, 1980.]

A. W. STEVENSON, *Respondent,* v. ROSE PARKER, *Appellant.*

A. *Craig McDonald* and *Gerald R. Tarntis* of *Evergreen Legal Services,* for appellant.

Don W. *Schussler, Richard R. Johnson,* and *Nashem, Prediletto, Schussler & Halpin,* for respondent.

McINTURFF, J.—In an action for unlawful detainer, the tenant, Mrs. Parker (now Corbray), appeals from a judgment in favor of the landlord, A. W. Stevenson. Counsel for A. W. Stevenson on this appeal did not represent him on the trial court level.

In the spring of 1974, the appellant, Mrs. Corbray, entered into an agreement to lease a home owned by the respondent, Dr. Stevenson. The term of the lease was for a period of 1 year beginning May 8, 1974, and ending May 7, 1975, and continuing from year to year. After 5 years, the lease gave Mrs. Corbray an option to purchase the property.[1]

---

[1]Although Mrs. Corbray has raised an issue relating to the option agreement, the option is not within the scope of the unlawful detainer act, RCW 59.12.030 *et seq.; Turner v. White,* 20 Wn. App. 290, 579 P.2d 410 (1978). Therefore, we will not address any issues arising therefrom.

Although the lease did not specify the amount of monthly rent, the parties agreed the sum of $101, equivalent to the monthly mortgage payment, was payable on the 8th day of each month. In addition, the lease obligated Mrs. Corbray to pay the real estate taxes and irrigation assessments. Although the original was not available at trial, both parties admit signing the lease and a copy was before this court.

Due to the seasonal nature of her employment and fluctuations in her income, Mrs. Corbray maintained an irregular payment schedule. Nevertheless, Dr. Stevenson and his business manager, who were aware of the situation, accepted all such payments by the tenant over a period of 4 years. Mrs. Corbray, believing she would one day exercise the option to purchase, made various improvements to the house following execution of the lease.

On June 28, 1978, Mrs. Corbray was served with a notice[2] of termination of the lease for alleged deficiencies in the payment of rent, taxes and irrigation assessments. Mrs. Corbray's offer to pay the claimed arrearages was refused. Dr. Stevenson then brought this action for unlawful detainer.

The trial court declared the parties' written lease void under the statute of frauds for lack of an acknowledgment.

---

[2]The notice of termination read, in part:

"YOU ARE HEREBY NOTIFIED that the undersigned does hereby elect to terminate that certain Lease Agreement dated the 8th day of May, 1974 wherein A. W. Stevenson and Elaine J. Stevenson are the Lessors, and you are the Lessee of property located at 816 S. 4th Street more particularly described as follows:

"Lot 8, Block 179, PARKER ADDITION TO NORTH YAKIMA, recorded in Volume "B" of Plats at page 50, records of Yakima County, Washington.

"The reason for the termination of the aforementioned Lease Agreement is your failure to pay rent in the amount of $305.00, to pay irrigation and water assessments in the amount of $64.38, and to pay taxes on the premises in the amount of $813.02.

"You are further notified that this Lease shall terminate on August 1, 1978 and on that day you will be required to surrender possession of the premises to the owner or his agent named below. If you do not surrender possession of these premises on or before the date set forth above, judicial proceedings will be instituted for your eviction."

The resulting month-to-month tenancy was held to have been properly terminated by the written notice. Judgment was entered restoring possession of the house to Dr. Stevenson, together with $1,447.41 in damages and $800 for attorney's fees.

On appeal, Mrs. Corbray argues enforcement of the parties' written lease should not be denied for lack of an acknowledgment. She first contends an acknowledgment is not required because the lease establishes a tenancy for five consecutive 1-year periods. We disagree.

The third and fourth paragraphs of the lease provided:

> The term of this lease shall be for a period of one (1) year, beginning on May 8, 1974 and ending at midnight on May 7, 1975 and continuing from year-to-year until one of the parties shall give the other thirty days' notice in writing of his or her intention to terminate the lease for default in the payment of rent or any other of the terms and conditions of this lease.
>
> Rent shall be paid in monthly installments in advance on the 8th day of each and every month commencing May 8, 1974 and a like sum on or before the 8th day of each and every month during the period hereof.

■ Under RCW 64.04.010 and .020, a lease for over 1 year must be in deed form, i.e., written, signed by the landlord, and acknowledged.[3]

Tenancies from year to year have been abolished except when they are created by express written contract and acknowledged. RCW 59.04.010 and RCW 59.18.210.[4] Upon

---

[3]RCW 64.04.010:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . ."

RCW 64.04.020:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

[4]RCW 59.04.010:

"Tenancies from year to year are hereby abolished except when the same are created by express written contract. Leases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals."

examination of the lease in question, it is apparent the parties contemplated a tenancy from year to year.

█ In general an unacknowledged lease for a term exceeding 1 year, with monthly rental reserved, is effective only as an oral lease, and results in a tenancy from month to month. *Haggen v. Burns*, 48 Wn.2d 611, 295 P.2d 725 (1956); *Labor Hall Ass'n, Inc. v. Danielsen*, 24 Wn.2d 75, 93, 163 P.2d 167, 161 A.L.R. 1079 (1945); *Garbrick v. Franz*, 13 Wn.2d 427, 430, 125 P.2d 295 (1942). But, this rule is not an absolute, especially when there are equities sustaining the lease or estopping a denial of its validity. *Miller v. McCamish*, 78 Wn.2d 821, 825, 479 P.2d 919 (1971); *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 527, 171 P.2d 703 (1946).

Obviously the purpose of the statute of frauds is to prevent a fraud, not to perpetuate one, and in this regard the courts of this state are empowered to disregard the statute when necessary to prevent a gross fraud from being practiced. *Granquist v. McKean*, 29 Wn.2d 440, 187 P.2d 623 (1947). The legislative intent in enacting the statute was to prevent fraud resulting from the uncertainty inherent in oral contracts of this nature. *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971).

*Powers v. Hastings*, 20 Wn. App. 837, 842, 582 P.2d 897 (1978).

Here, we have an express, but unacknowledged, written lease. The parties do not dispute its basic terms. Absent then are the evils—the potential for fraud and the uncertainty inherent in oral agreements—which necessitated the statute of frauds.

█ The equitable doctrine of part performance has evolved in mitigation of the harsh results of a too–strict application of the statute of frauds. This doctrine prevents

---

RCW 59.18.210:

"Tenancies from year to year are hereby abolished except when the same are created by express written contract. Leases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals." (Landlord–tenant act.)

a party from asserting the invalidity of a contract where the other party has acted in conformity with the contract and thus placed himself in a position where it would be intolerable in equity to deny its enforcement. *Miller v. McCamish, supra* at 827; *Garbrick v. Franz, supra* at 430, and cases cited.

> The principle elements or circumstances involved in determining whether there has been sufficient part performance to unequivocally point to the contract are (1) delivery and assumption of actual and exclusive possession of the land, (2) payment or tender of the consideration, whether in money or property or services, and (3) the making of permanent, substantial and valuable improvements, referable to the contract.

*Powers v. Hastings, supra* at 847.

Applying these elements to the facts, we find sufficient part performance to remove the lease from the operation of the statute of frauds. First, Mrs. Corbray took possession of the house in May 1974, under the terms of a written lease which the parties have subsequently treated as the measure of their rights. This long acquiescence, in itself, has been held to be a sufficient waiver of the right to avoid a lease for lack of an acknowledgment. *Gattavara v. Cascade Petroleum Co.*, 27 Wn.2d 263, 265–66, 177 P.2d 894 (1947); *Metropolitan Bldg. Co. v. Curtis Studio of Seattle*, 138 Wash. 381, 386–87, 244 P. 680 (1926).

Second, given the irregular arrangement regarding the payment of rent, Mrs. Corbray made substantial payments under the lease prior to service of the notice of termination. Upon receipt of this notice, the uncontradicted testimony indicates Mrs. Corbray attempted to tender a sum in satisfaction of the alleged delinquencies, but her offer was refused.

Third, both parties agree Mrs. Corbray leased the house in the hope of exercising the lease option to purchase at the end of 5 years. This explains the improvements Mrs. Corbray made to the home following execution of the lease: painting the house inside and out (cost: paint—$406;

labor—$513.37); installation of a hot water tank (cost: $150); toilet and face bowl (cost: $90); winter weatherization–insulation (cost: $250); two storm doors and two windows (cost unknown).

Dr. Stevenson argues many of these repairs were made at government expense and thus not attributable to Mrs. Corbray.[5] This contention, however, ignores the fact that Mrs. Corbray took advantage of these government entitlements in reliance upon the lease option to purchase. Taken as a whole, the actions of the parties point unmistakably to the lease, which necessarily includes the option to purchase. Furthermore, the property benefited from these improvements, through action of the lessee, not the lessor.

Next, having survived the strictures of the statute of frauds, Mrs. Corbray argues she was not given notice of her right to remedy the alleged rental deficiencies as required by the terms of the lease and the unlawful detainer statute. Dr. Stevenson argues that notice under RCW 59.12.030(2) was sufficient but this contention ignores the specific provisions of the lease.

The lease contains two separate, but inconsistent, provisions regarding written notice of termination. The first provision stated the lease was to continue from year to year:

> until one of the parties shall give the other *thirty days' notice* in writing of his or her intention to terminate the lease for default in the payment of rent or any other of the terms and conditions of the lease.

(Italics ours.) The final paragraph of the lease provided:

> Time is of the essence of this lease and in the event that the Lessee shall violate any term, condition or covenant of this agreement and *such violation or breach thereof shall continue in effect for a period of fifteen (15) days after service of written notice upon the Lessee to remedy said breach or defect,* then and in that event

---

[5]Mrs. Corbray paid for the paint, the hot water tank, the toilet and face bowl. The remaining improvements and labor were furnished by the Yakima Valley Occupational Industry Center, an organization which provides employment opportunities and operates a program for home repair to qualified applicants.

Lessee's rights hereunder shall cease and determine and the Lessors shall be entitled to immediate possession of said described premises.

(Italics ours.)

■ ■ It is a familiar rule that if the provisions of a lease create ambiguity, the court will adopt the interpretation more favorable to the lessee, particularly when, as here, the lease was drafted by the lessor. *Stuchell v. Mortland*, 8 Wn. App. 884, 893, 509 P.2d 770 (1973); *Allied Stores Corp. v. North West Bank*, 2 Wn. App. 778, 784, 469 P.2d 993 (1970); *Blume v. Bohanna*, 38 Wn.2d 199, 203, 228 P.2d 146 (1951). Based upon these two inconsistent provisions, we find notice of the right to remedy the alleged delinquencies was a condition precedent to forfeiture of the lease.[6] Because the notice of termination dated June 28, 1978, did not notify Mrs. Corbray of her right to remedy the default, the cause of action for forfeiture of the lease should have been dismissed, particularly in view of the uncontradicted evidence of Mrs. Corbray's offer to pay the rental delinquency. *Gray v. Gregory*, 36 Wn.2d 416, 419, 218 P.2d 307 (1950); *Republic Inv. Co. v. Naches Hotel Co.*, 190 Wash. 176, 180, 67 P.2d 858 (1937).

Even in the absence of the 15–day right to remedy clause, a similar result is required by statute. In an unlawful detainer proceeding where the tenant is in default in the payment of rent, RCW 59.12.030(3), as a condition precedent, requires the tenant to be served with a written notice to pay rent, or in the alternative, vacate the premises within 3 days of the date of service to be followed by the service of a summons and complaint.[7]

---

[6]The first provision calls for 30 days' written notice to terminate; whereas the second provision gives the tenant 15 days to cure the default, but the failure to pay results in a termination at the end of 15 days.

[7]*Sowers v. Lewis*, 49 Wn.2d 891, 894–95, 307 P.2d 1064 (1957); *Little v. Catania*, 48 Wn.2d 890, 892, 297 P.2d 255 (1956); *Davis v. Palmer*, 39 Wn.2d 219, 222, 235 P.2d 151 (1951); *State ex rel. Robertson v. Superior Court*, 95 Wash. 447, 448–49, 164 P. 63 (1917); *Jeffries v. Spencer*, 86 Wash. 133, 135–36, 149 P. 651 (1915).

■ Mrs. Corbray had the right to expect compliance with the right–to–remedy clause, designed for her benefit and protection. This is particularly true when the lessor had repeatedly granted indulgences to the tenant regarding the timely payment of rents and assessments, thereby waiving the right of forfeiture for past breaches.[8]

As the court noted in *Spedden v. Sykes,* 51 Wash. 267, 272, 98 P. 752 (1908):

> This court has held the general doctrine that forfeitures are not favored in the law, and that courts should promptly seize upon any circumstance arising out of the contract or relations of the parties that would indicate an election or an agreement to waive the harsh and at times unjust remedy of forfeiture, a remedy which is oftentimes too freely granted by those who have taken no account of the misfortunes and disappointments which conditions, unforeseen and beyond a party's control, have raised as a bar to performance, however honest may be his intent. *Whiting v. Doughton,* 31 Wash. 327, 71 Pac. 1026 [(1903)]. Equity will enforce forfeitures when it is the contract of the parties that it shall be so. But before making its decree it will consider every agreement, every declaration, and every relation of the parties arising out of the contract; and if there be anything that warrants a finding that the parties have resolved anew, it will so decree.

*Accord, Dill v. Zielke,* 26 Wn.2d 246, 252, 173 P.2d 977 (1946); *Port of Walla Walla v. Sun–Glo Producers, Inc.,* 8 Wn. App. 51, 60–61, 504 P.2d 324 (1972).

Mrs. Corbray has been less than careful in making timely payments as required by the lease. But this carelessness must be weighed against a forfeiture of valuable rights. In view of the conduct of the parties, including Mrs. Corbray's unsuccessful tender of the alleged deficiency, the action for

[8]*Ennis v. Ring,* 49 Wn.2d 284, 289–90, 300 P.2d 773 (1956); *Signal Oil Co. v. Stebick,* 40 Wn.2d 599, 603–04, 245 P.2d 217 (1952); *Wilson v. Daniels,* 31 Wn.2d 633, 639–40, 198 P.2d 496 (1948); *Richardson v. Sears,* 74 Wash. 499, 506, 133 P. 1010 (1913); *Prager's, Inc. v. Bullitt Co.,* 1 Wn. App. 575, 586, 463 P.2d 217 (1969).

unlawful detainer is dismissed, with the exception of the award for past and present rental due.

We are not inclined to award attorney's fees to either party, finding the equities of this case equally divided.

Judgment of the Superior Court is reversed; the case is remanded to Superior Court for a determination of the total rent, taxes and assessments presently due or now owing.

MUNSON and ROE, JJ., concur.