[No. 3601–4–III.   Division Three.   May 12, 1981.]

KAUFMAN BROTHERS CONSTRUCTION, INC., *Respondent,* v.
THE ESTATE OF ELMER A. OLNEY, *Respondent,*
GERALD W. SOUTHARDS, ET AL,
*Appellants.*

*Charles C. Countryman,* for appellants Southards.

*Robert W. Inouye, Roland L. Skala,* and *Weeks, Dietzen, Skala & Inouye,* for appellant International Harvester Credit Corp.

*Ralph G. Swanson* and *Pebbles, Swanson & Lindskog,* for respondent Kaufman Brothers Construction.

*George F. Velikanje* and *Velikanje, Moore & Shore,* for respondent Estate of Olney.

McINTURFF, C.J.—Mr. and Mrs. Gerald Southards appeal the granting of a forfeiture in a lease–option agreement.

In the summer of 1971, Elmer A. Olney leased 80 acres of farmland to Mr. and Mrs. Southards with an option to purchase the property for $30,000 (less lease payments) prior to the expiration of the lease on February 28, 1976. The lease, among other provisions, required the Southards pay as rental the sum of $1,000 on or before the 1st day of March and October of each year. The lease further provided these payments would be credited toward the purchase price of $30,000 should the option be exercised.

Over the 5–year term of the lease, the Southards farmed the land and expended approximately $10,000 to $15,000 for materials, plus labor, to make needed improvements to the residence and outbuildings. Mr. Southards testified the value of the land had appreciated dramatically during his agreement with Mr. Olney. The Southards received offers to purchase the land at prices ranging from $95,000 to $105,000. Of the nine payments due under the lease, only one was made when due—all other payments were offered late and accepted by Mr. Olney, who never elected to cancel the lease.[1] Three days before the expiration of the lease

---

[1] The payment schedule and actual payments are as follows:

option, the Southards sent written notification to Mr. Olney of their desire to exercise the option to purchase. The October 1, 1975 installment had not been made when the option was exercised on February 25, 1976, nearly 5 months later. On December 29, 1976, Mr. Olney, via counsel, declared the option ineffective because of the nonpayment of the last installment.

On December 15, 1976, Mr. Olney executed a $27,286 note to Kaufman Brothers Construction, Inc. (Kaufman) for the balance of a contract to construct a store building and residence. The note was secured with a mortgage on the property previously leased to the Southards. The note stipulated that Mr. Olney agreed to use either the proceeds of the sale of the land or the land itself as security and payment for the note. Since Mr. Olney died during the transaction of these affairs, Kaufman brought an action against Mr. Olney's estate in August 1977 to foreclose the mortgage.[2]

The trial judge determined the Southards were in default under the lease–option at the time they attempted to exercise their option to purchase and the Southards were adjudged subordinate to Kaufman's mortgage lien. The property was sold at sheriff's sale September 1, 1979. This appeal followed.

| Payments Due | Actual Payment |
|---|---|
| July 30, 1971 | October 7, 1971 |
| October 1, 1971 | November 19, 1971 |
| March 1, 1972 | April 6, 1972 |
| October 1, 1972 | October 2, 1972 |
| March 1, 1973 | July 13, 1973 |
| October 1, 1973 | October 1, 1973 |
| March 1, 1974 | March 6, 1974 |
| October 1, 1974 | November 11, 1974 |
| March 1, 1975 | March 14, 1975 |
| October 1, 1975 | Overdue |

[2]The Southards filed a petition for proceedings under Chapter 12 of the Federal Bankruptcy Act on September 29, 1977. The referee in bankruptcy transferred the mortgage question to the superior court for determination. Consequently, the Southards' creditors challenge the Kaufman mortgage.

■■ The gravamen of this appeal centers on whether the nonpayment of the last installment of rent invalidated the exercise of the option where there had been no prior declaration of forfeiture from the lessor, Mr. Olney.[3] The lease provided in part:

> On the condition that the Lessees shall faithfully perform and observe the terms, agreements, and conditions on their part to be kept and performed, the Lessors give and grant to the Lessees the exclusive option to be exercised by the Lessees at any time during the term of the lease . . .

Although the Southards admit they failed to make the final rental installment, Mr. Olney remained silent. In the past he accepted performance under the contract, albeit untimely. Under the lease, Mr. Olney had the option to terminate its provisions:

> Should Lessees fail to timely or fully comply with and fulfill each and all of the provisions herein contained, then, in addition to the other remedies provided to Lessors by law, Lessors may, at their option, . . . give written notice to Lessees saying wherein they are in default and that if Lessees shall fail to make good any such default within fifteen (15) days after such notice has been mailed by certified mail or personally served upon the Lessees, then Lessors may cancel and terminate this lease and re–enter the herein leased premises.

Mr. Olney did not exercise this option prior to the Southards' notice to purchase on February 25, 1976. Repeated acceptance of untimely payments waives the right of forfeiture for past breaches. *Stevenson v. Parker,* 25 Wn. App. 639, 646–47, 608 P.2d 1263 (1980). This court in

---

[3]Mr. Olney's estate maintains the failure by the Southards to assign error to the trial court's findings precludes review on appeal. RAP 10.3(a)(3). Generally, findings to which no error has been assigned will be treated as verities. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 213, 608 P.2d 254 (1980). However, this court may waive the defect where assignments of error are clearly set forth in the associated issues. RAP 10.3(g). *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 329–30, 582 P.2d 500 (1978). It is clear from the Southards' opening brief which findings are challenged. Since the appeal has merit, we will waive the defect.

*Stevenson* further noted at page 647:

> This court has held the general doctrine that forfeitures are not favored in the law, and that courts should promptly seize upon any circumstance arising out of the contract or relations of the parties that would indicate an election or an agreement to waive the harsh and at times unjust remedy of forfeiture, a remedy which is oftentimes too freely granted by those who have taken no account of the misfortunes and disappointments which conditions, unforeseen and beyond a party's control, have raised as a bar to performance, however honest may be his intent. Equity will enforce forfeitures when it is the contract of the parties that it shall be so. But before making its decree it will consider every agreement, every declaration, and every relation of the parties arising out of the contract; and if there be anything that warrants a finding that the parties have resolved anew, it will so decree.

(citation omitted) citing *Spedden v. Sykes,* 51 Wash. 267, 272, 98 P. 752 (1908). Moreover, the court in *Dill v. Zielke,* 26 Wn.2d 246, 252, 173 P.2d 977 (1946) stated:

> It is equally well established, however, that forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit of no denial.

(Citations omitted.) Nonpayment of rent does not automatically terminate a lease option. Although the breach here may have given Mr. Olney an opportunity to elect to terminate the agreement, he cannot do so absent an objective manifestation of his intent to declare a forfeiture. Until the right to declare forfeiture is exercised, the agreement remained in effect. *Esmieu v. Hsieh,* 20 Wn. App. 455, 460, 580 P.2d 1105, *aff'd,* 92 Wn.2d 530, 598 P.2d 1369 (1979); *In re Estate of Soffa,* 5 Wn. App. 49, 52, 485 P.2d 465 (1971); *Keene v. Zindorf,* 81 Wash. 152, 161, 142 P. 484 (1914). Since the Southards exercised their option to purchase prior to the attempted declaration of forfeiture, the

option is enforceable.[4]

■ Mr. Olney's estate also maintains the option is unenforceable because the Southards had limited personal funds available to make the purchase at the time they exercised the option. It is not necessary the buyer have funds immediately available when the option is exercised. The law only requires payment be made under the terms of the option. As stated in *Duprey v. Donahoe,* 52 Wn. 2d 129, 135, 323 P.2d 903 (1958):

> Since we hold that respondents properly exercised their option to purchase, they then became entitled to a proper execution and delivery of the deed. It was not necessary that respondents tender the purchase price to the appellants or deposit the same into the registry of the court, when the appellants denied the existence of a contract. The law will not require one to perform a useless act.

(Citation omitted.) In the instant case, the lease required closing within 30 days after exercise of the option. The record indicates the Southards were ready, willing and able[5] to close the transaction. Subsequent negotiations (concerning the correct balance owed, costs of missing equipment, etc.) continued until Mr. Olney repudiated the effectiveness of the option on December 29, 1976.[6]

Mr. Olney's estate lastly contends there was no forfeiture since the Southards had no equity in the land. We summarily deal with this contention by noting the agreement was a lease with the option to purchase and in addition to

---

[4]We note that although a trial judge sitting in equity may fashion broad remedies to do substantial justice, the failure to pay the last installment payment did not result in any loss to the lessor, Mr. Olney. When the Southards opted to purchase the property they promised to pay, under the contract, the agreed purchase price less lease payments to date, which would be credited against the final escrow amount. Whether the Southards paid the amount due on October 1, 1975 or paid at closing, Mr. Olney would still receive the net benefit of his bargain.

[5]Testimony indicated the Southards could have received third party financing.

[6]In his memorandum opinion the trial judge also determined the contention of "no tender" was without merit, citing *Duprey, supra.*

$9,000 in installment payments, the Southards expended $10,000 to $15,000 plus labor to improve their home. Although the balance owed was $21,000 to $23,000 the fair market value was approximately $100,000 which could result in a potential loss to the Southards of approximately $77,000 to $79,000.

Because our resolution of the central issue is dispositive of the appeal, we need not address the remaining issues.

Judgment of the Superior Court is reversed.

MUNSON and ROE, JJ., concur.