[No. 48409–1. En Banc. December 22, 1982.]

ROSE CORBRAY, *Petitioner,* v. A. W. STEVENSON, ET AL, *Respondents.*

*F. Joe Falk, Jr.* (of *Walters, Whitaker, Finney & Falk*), for petitioner.

*Richard R. Johnson* (of *Nashem, Prediletto, Schussler & Halpin*), for respondents.

DOLLIVER, J.—In the spring of 1974 Rose Parker (now Corbray) entered an agreement to lease a house from A. W. Stevenson. The term of the lease was for 1 year, continuing thereafter from year to year. The lease also contained the following provision:

6. It is understood and agreed by and between the parties that the above–described premises are mortgaged to the Yakima Home Federal Savings & Loan Association. It is further understood and agreed by and between the parties that at the end of a period of five (5) years from the commencement of this lease and upon the condition that the Lessee has kept and faithfully performed all of the terms and conditions of this lease, the parties will renegotiate the same and that the Lessee may purchase the said real property by the assumption of the then existing balance of the mortgage loan to said savings and loan association.

The final paragraph of the instrument is:

Time is the essence of this lease and in the event that the Lessee shall violate any term, condition or covenant of this agreement and such violation or breach thereof shall continue in effect for a period of fifteen (15) days after service of written notice upon the Lessee to remedy said breach or defect, then and in that event Lessee's rights hereunder shall cease and determine and the Lessors shall be entitled to immediate possession of said described premises.

Due to the seasonal nature of her employment and fluctuations in her income, Corbray maintained an irregular payment schedule. Stevenson and his business manager, who were aware of the situation, accepted all her payments for about 4 years.

On June 28, 1978, Corbray was served with a notice of termination of the lease for alleged deficiencies in the payment of rent, taxes, and irrigation and water assessments. Her offer to pay the claimed arrearages was refused. Stevenson then brought an action for unlawful detainer. Shortly thereafter, Corbray instituted this separate action for declaratory relief, specific performance of the purchase option, and damages.

In the unlawful detainer action the trial court declared the lease void under the statute of frauds for lack of an acknowledgment. The resulting month–to–month tenancy was held to have been properly terminated by the written notice. On appeal, the Court of Appeals reversed and remanded the case for a determination of the amount of rent, taxes, and assessments due. *Stevenson v. Parker,* 25 Wn. App. 639, 608 P.2d 1263 (1980). The court held the lease to be enforceable under the doctrine of part performance and the lessee entitled under the lease to notice of the right to remedy the arrearages. The court specifically declined to consider the validity of the option to purchase. *Stevenson v. Parker, supra* at 640 n.1.

In Corbray's declaratory judgment action, at issue here, Stevenson moved for summary judgment. In an affidavit he acknowledged execution of the lease agreement and stated it was his desire and intention that Corbray have an opportunity to purchase the property "only upon the condition she fully, timely, and faithfully perform all of the terms and conditions of the agreement throughout its term." He further stated that whenever his business manager informed him Corbray was not making timely and full payments, he instructed the business manager to demand Corbray pay all arrearages and make future payments promptly and in full. While he acknowledged Corbray was allowed to make partial payment of arrearages, Stevenson stated he did not intend this to constitute a waiver of his rights under the lease.

In her affidavit, Stevenson's business manager stated Corbray had never paid the real estate taxes on the leased premises, had been delinquent in making several rental payments, and that she had on several occasions spoken to or corresponded with Corbray about the delinquencies.

Corbray in her responding affidavit stated she had never considered herself to be behind in her rent payments and had either made up or offered to make up all arrearages when she was requested to do so by Stevenson or his business manager. She could remember only two occasions,

once in 1975 and once in 1976, when she was notified she was behind in her payments and claimed on both occasions she and the business manager agreed on the means by which the payments would be made up, which was subsequently done. Corbray stated that in June of 1978 Stevenson claimed she was behind by approximately $1,200, but she disagreed with that figure. She concluded by stating whenever she was notified back payments were due she promptly paid or offered to pay them even though she disagreed with the amounts paid.

Corbray's trial court attorney, A. Craig McDonald, also filed an affidavit. He stated that by letters of April 27, 1979, and May 3, 1979, written to one of Stevenson's attorneys, he had notified Stevenson Corbray intended to exercise the purchase option. The April 27 letter tendered performance of the purchase option by offering to pay all past due rent and taxes out of an $8,000 cash supersedeas bond on deposit with the clerk of the superior court in connection with the appeal of the unlawful detainer action. McDonald stated Corbray was willing to assume the existing mortgage against the property. The same offer was further detailed in the May 3 letter. A letter from Stevenson's attorney rejecting these offers was also attached to McDonald's affidavit.

The trial court granted Stevenson's motion for summary judgment.

Division Three of the Court of Appeals affirmed in an unpublished decision. The court reasoned Corbray's option to purchase was subject to the condition precedent that she keep and faithfully perform all the terms and conditions of the lease. Because it found this condition was not met the court declared "the option never became viable." The court also held Corbray's waiver argument "has no application" since it pertained to forfeiture of the lease but not to the purchase option, and the notice provisions of the lease applied only to continuation of the lease and not to the purchase option. Finally, the court held the notice of termination of the lease and the unlawful detainer action were sufficient notice to Corbray that she was not in compliance

with the terms of the lease, even though it had previously been held insufficient to terminate the lease.

In their briefs the parties make and respond to a variety of arguments as to whether plaintiff should or should not be entitled to exercise the option to purchase in paragraph 6. There are only three issues we need consider. First is the allegation by plaintiff of ambiguity in the lease terms "kept and faithfully performed" in paragraph 6 and "time is the essence" in the final paragraph.

■ Words should be given their ordinary meaning, *Fancher Cattle Co. v. Cascade Packing, Inc.,* 26 Wn. App. 407, 613 P.2d 178 (1980); contracts should be construed to reflect the intent of the parties, *Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966); and courts, under the guise of construction or interpretation, should not make another or different contract for the parties, *Poggi v. Tool Research & Eng'g Corp.,* 75 Wn.2d 356, 451 P.2d 296 (1969). "Faithfully" has been shown to mean,

> [c]onscientious diligence or faithfulness in meeting obligations, or just regard of adherence to duty, or due observance of undertaking of contract. Commonwealth v. Polk, 256 Ky. 100, 75 S.W.2d 761, 765. Diligently, and without unnecessary delay. Truthfully, sincerely, accurately.

Black's Law Dictionary 539 (5th ed. 1979). The words are plain, direct, and unambiguous and need no further inquiry as to meaning.

Plaintiff claims "time is of the essence" is a well defined term and is frequently used in contracts whereas "time is the essence" has no recognized legal meaning. Plaintiff has not enlightened us as to how the two phrases differ in meaning and we see no difference. The claim of ambiguity is without substance.

Next, as pointed out by the Court of Appeals in its unpublished opinion, Corbray v. Stevenson,

> the record supports a conclusion that Mrs. Corbray did not keep and faithfully perform the terms and conditions of the lease for the 5–year period. Because the second

condition precedent [that she keep and faithfully perform all of the terms and conditions of the lease] was not met, the option never became viable. Thus, Mrs. Corbray had no option to exercise.

Corbray, however, asserts *Kaufman Bros. Constr., Inc. v. Estate of Olney*, 29 Wn. App. 296, 628 P.2d 838 (1981) is controlling. In that case Kaufman Brothers, a third party, tried to recover monies from the lessor's estate by foreclosing a mortgage held on the lease property. Lessees had executed a lease for 5 years with a $30,000 purchase option, they were consistently late in the semiannual lease payments, and the final payment had not been made when, 3 days prior to the option's expiration, the lessees indicated their intent to exercise the option. The Court of Appeals ruled in favor of the lessees.

*Kaufman* is distinguishable and is not controlling. There are several differences between *Kaufman* and the present case: (1) The purchase option in *Kaufman* could have been exercised at any time prior to the lease expiration; (2) the semiannual lease payments were to be credited to the purchase price; and (3) the purchase price was stated. None of those provisions were in the Stevenson/Corbray instrument.

██ Additionally, the lessees in *Kaufman* were never informed the lessor was upset with the lessees' performance. Indeed, it was 10 months after the lease expiration and after the lessees' notification of their intent to purchase before the lessor gave notice of intent to declare a forfeiture. The court stated, "[r]epeated acceptance of untimely payments waives the right of forfeiture for past breaches. *Stevenson v. Parker*, 25 Wn. App. 639, 646–47, 608 P.2d 1263 (1980)." *Kaufman*, at 299. The court went on to observe, "[s]ince the Southards [lessees] exercised their option to purchase prior to the *attempted* declaration of forfeiture, the option is enforceable." (Italics ours.) *Kaufman*, at 300–01. We agree with the Court of Appeals that the filing of the notification of termination of the lease and the unlawful detainer action, *Stevenson v. Parker, supra*, which occurred almost a year prior to the time the option

could first be exercised, was sufficient notice to Corbray she was not in compliance with the terms of the lease. (The fact Stevenson paid off the mortgage 3 weeks after he notified Corbray of the forfeiture although complained of by Corbray does not injure any right she might have under the lease option agreement.)

Finally, in *Kaufman,* a large financial loss would have been incurred by the lessees who had expended $10,000 to $15,000 in reliance on the option. Furthermore, the market value of the property had increased dramatically. These expenditures, unlike the minor expenditures in the present case, were not required by the lease nor is there any showing of an unusual increase in the value of the property. Corbray can point to no reliance on the option nor any loss which would be occasioned by the forfeiture of the lease.

There is the remaining issue of waiver. In *Hindquarter Corp. v. Property Dev. Corp.,* 95 Wn.2d 809, 631 P.2d 923 (1981), we held the right to disclose a forfeiture of the lease and the right to refuse to renew are separate and distinct. The right to refuse an option to purchase is also separate and distinct. It should be noted there was no issue of waiver in *Hindquarter.*

Thus, the determination in *Stevenson v. Parker* that there had been a waiver by Stevenson as to the provisions of the lease has no application to the question of whether there was a waiver by Stevenson of the requirements of the lease agreement relative to the right of Corbray to exercise her option to purchase. Corbray must be able to show Stevenson, by accepting the late payments, not only waived the forfeiture of the lease but also intended to waive the separate requirements of the purchase option.

We express concern, however, that the issue of waiver was determined on summary judgment without further factfinding. Courts in Washington have not favored forfeitures. *See Esmieu v. Hsieh,* 20 Wn. App. 455, 580 P.2d 1105 (1978); *In re Estate of Soffa,* 5 Wn. App. 49, 485 P.2d 465 (1971). *See* Annot., 53 A.L.R.3d 435 (1973). We believe it is inappropriate given the circumstances in this

case to make a determination on the question of waiver in a summary judgment. Rather this question should be considered by the trial court and be subject to appropriate findings of fact and conclusions of law.

If there was a waiver by Stevenson of the requirements of paragraph 6 relative to the option to purchase, it may be exercised by plaintiff; if there was no waiver by Stevenson, plaintiff will not be entitled to exercise her option. This is the only issue to be resolved. We reverse and remand to the trial court solely for determining the question of waiver.

ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

BRACHTENBACH, C.J. (concurring)—I agree with the majority that the determinative issue is whether Dr. Stevenson waived his right to terminate Mrs. Corbray's option to purchase the disputed property. However, I also want to express frustration over not reaching the merits of that issue at this time. This is a simple case of a breached lease that incredibly has expanded into two separate superior court trials, two Court of Appeals decisions, as well as this majority opinion. Unfortunately, the record before this court is not yet sufficient to allow a determination of the lessor's intent or the number and amounts of delinquent payments the lessor might have accepted. Since these elements are necessary to a finding of waiver, we remand the case to complete those findings. *Stevenson v. Parker,* 25 Wn. App. 639, 608 P.2d 1263 (1980).

Reconsideration denied February 15, 1983.