CARTOZIAN & SONS, INC., *Respondent*, v. OSTRUSKE-MURPHY, INC., *Appellant.*[*]

*Murray J. Anderson* (of *Lee, Krilich & Anderson*), for appellant.

*Gordon, Goodwin, Sager & Thomas*, for respondent.

[*]Reported in 390 P. (2d) 548.

FINLEY, J.—This is an action seeking damages for an alleged breach of contract. Cartozian & Sons, Inc., (plaintiff-respondent) contracted to supply and install all carpeting for an apartment house being constructed by the defendant, Ostruske-Murphy, Inc. The defendant repudiated the contract on the ground that plaintiff failed to perform within the allegedly prescribed time in the contract. Plaintiff instituted this lawsuit.

The only documentary evidence of the contract between Cartozian & Sons, Inc., and Ostruske-Murphy, Inc., is a letter, which we set out in full as follows:

"March 7, 1961
"Ostruske-Murphy, Inc.
"1515 Center Street
"Tacoma, Washington
"Re: Thunderbird Apartments
"Dear Mr. Ostruske:
"Pursuant to our conversation, we do hereby agree to supply all carpet, pad, labor and metal for the above mentioned Apartment House, subject to your approval, for the actual cost of material and labor, including all cash discounts. We also promise to work completely in your interest in every way possible in securing discontinued merchandise, but assure you that all merchandise will be perfect goods. Any and all savings in purchasing will be to your benefit.

"We will supply actual invoices from the mills and we will expect the necessary amounts of money one day before the due date of all invoices to protect our credit. If for any reason Ostruske-Murphy does not pay invoices as stated, the 5% cash discount will be sacrificed by them.

"For this service Ostruske-Murphy promises to pay us, Cartozian & Sons, Inc., the sum of $1.00 per each yard purchased, and this sum can be withheld until the completion of the job. Labor will be at the rate of $1.40 per square yard, Metal at .30¢ per foot.

"Yours truly,
"Cartozian & Sons, Inc.
"Accepted by /s/ Edward S. Cartozian
"Ostruske-Murphy, Inc.
"Accepted by /s/ W. H. Ostruske"

Although the above letter sets no final date for the completion of services by the Cartozian corporation, Ostruske-

Murphy contended that a contemporaneous oral agreement required performance on or before July 1, 1961. In the trial court Cartozian & Sons, Inc., admitted that such an oral agreement probably had been made; so for the purposes of this appeal, the written contract (the letter set out above) may be considered as so modified.

After the parties entered the contract, Cartozian performed preliminary work—measuring the apartment building, making shopping trips in search of bargain prices on rugs, and showing various samples of material to Ostruske-Murphy, Inc. The latter approved some of the samples for the apartment, but in each instance it developed that such materials were not available in the necessary quantities, and Cartozian placed no orders for carpeting on behalf of Ostruske-Murphy, Inc. Cartozian & Sons, Inc., did, however, place an order for some 3,500 yards of padding of a type approved by the Ostruske corporation on June 19, 1961.

On or about July 1, 1961 (the deadline set by the oral part of the contract), Ostruske-Murphy, Inc., through its president William Ostruske, informed Cartozian & Sons by telephone that the contract had not been performed on time and was terminated. Ostruske-Murphy thereafter made arrangements with another contractor for the required carpeting. However, the record shows that the new supplier was unable to start installation until September 1961, because construction of the apartment was not finished until that time. Cartozian & Sons, Inc., would not acquiesce in the cancellation of the contract, asserting ability and willingness to perform, and claiming that any previous delay had been caused by the search for carpeting at bargain prices and was in the interest of Ostruske-Murphy, Inc. When the latter rejected any further business relationship under the contract, Cartozian & Sons commenced the present lawsuit.

The trial court sitting without a jury found that the repudiation of the contract on July 1 was an unwarranted breach of a valid and subsisting obligation to perform; that time was not of the essence respecting the contract; and that the plaintiff should recover his damages in the amount

of $2,800, calculated by multiplying the number of square yards of carpet involved by the agreed profit of $1.00 per yard, the resultant being the profits lost by the respondent.

In appealing the action of the trial court, Ostruske-Murphy contends (1) that its promise in the March 7 contract was illusory and uncertain, and (2) that respondent's prior breach in failing to meet the agreed completion date constituted grounds for appellant's repudiation of the entire contract.

■ The appellant bases its claim that the contract was illusory and indefinite—respecting the extent of its obligation—upon the words "subject to your approval," which phrase refers to the price and quality of the carpeting and materials to be supplied. Granting that the appellant had an unlimited right to approve the color, quality, price and date of delivery of the carpets, this would not constitute an unlimited right to determine the nature and extent of his own obligation under the contract. The cost of the material was not predetermined; but the net amount payable in consideration of respondent's services was fixed and certain: $1.00 per yard for an ascertainable quantity of carpeting. Respondent was to receive $2,800, regardless of the quality of the material eventually selected by appellant.

Cases in other jurisdictions which have dealt with sale contracts specifying certain quantities but leaving the quality, grade and assortment to the option of the parties are collected in an annotation in 106 A.L.R. 1284. There, the prevailing view is stated to be as follows:

"A number of cases in which the contract was definite as to the quantity of the goods or articles specified, but the selection of the quality or grade was indefinite or left optional with the buyer or seller, have held such contracts to be invalid and unenforceable for the logical and compelling reason, among others, that in the event of a breach there would be no reasonably accurate or definite means of determining the measure of damages, particularly where, as in a number of the cases supporting this view, the price to be paid depended upon the quality or grade of the articles to be selected. . . ."

As appears from the quoted statement, the rationale of most cases where the courts refuse to enforce such contracts involves a difficulty in determining damages because the extent of the performance required (value of goods to be delivered) is unknown yet vitally affects the rights of the parties. This difficulty is not involved in the present case.

Here the "cost-plus" nature of the contract—the buyer to pay the total cost of whatever material it selects, and the seller to receive a definite, ascertainable fixed sum, irrespective of the kind of selection made by the buyer—resolves the problem as to measure of damages. Appellant does not, and clearly could not, contend that he could terminate his duty to perform by a bad-faith refusal to select the materials to be used for his own apartment building. As the possible variance in the cost of the materials does not alter in any manner the obligation running to the respondent, this cannot be considered a defect in the contract.

Assuming in effect that the contract is enforceable, the appellant next contends that its repudiation of July 1 was justified because of the failure of Cartozian & Sons, Inc., to perform by that date. Appellant contends that time was of the essence in the contract, and that the failure to meet the cut-off date terminated any obligation under it.

In the written portion of the contract no mention is made respecting a completion date. The oral part of the contract, setting the July 1 date, was proved in part by the following testimony which appellant elicited from respondent at trial:

"Q. So you accept July 1st as the date when this order was to be placed or delivered as the case may be? A. Yes, but not stressed as anything real serious."

■■ Therefore, it would appear that neither the written nor the oral part of the contract expressly provided that time was to be of the essence. Where there is no such express provision the question as to whether a delay in performance is a material breach depends upon the surrounding circumstances. *Jacks v. Blazer* (1951), 39 Wn. (2d) 277, 235 P. (2d) 187. While any breach will give rise to cause of action for damages, a breach does not become

cause for repudiation until it is, under all of the circumstances surrounding the contract, so material as to amount to a substantial or total failure of consideration. 6 Corbin, Contracts § 1253, p. 13.

Under the facts of the present case the delay engendered by the respondent was not such a material breach as could constitute by July 1 a substantial failure of consideration. The supplier, later selected by the appellant to install rugs, was unable to begin work before September because the apartment building was not ready. We are convinced, as was the trial judge, that time was clearly not of the essence. The delay by Cartozian & Sons, Inc., such as it was, by no means impaired the consideration which the appellant, Ostruske-Murphy, Inc., had bargained for and could have received. The repudiation of the obligation to further perform was unjustified, and the anticipatory breach of the contract supports respondent's claim for damages.

The judgment of the trial court is affirmed.

OTT, C. J., DONWORTH and HAMILTON, JJ., and POYHONEN, J. Pro Tem., concur.