IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SOUNDBUILT NORTHWEST, LLC, a )
Washington limited liability company ) No. 74128-4-I
and successor-in-interest to SOUND ) (consolidated with 75994-9-I)
BUILT HOMES, INC., )
) DIVISION ONE
          Appellant, )
)
      v. )
)
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, a Nebraska )
insurance company; and LAWYERS ) UNPUBLISHED OPINION
TITLE INSURANCE CORPORATION, )
a Nebraska insurance company, ) FILED: August 28, 2017
)
         Respondents. )
_____)

BECKER, J. — Substantial evidence supports the jury's verdict that Soundbuilt's breach was material and Commonwealth's was not. Soundbuilt has not met its burden to prove that it is entitled to damages. As the prevailing party, Commonwealth is entitled to attorney fees and costs under the settlement agreement. We affirm.

FACTS

This case concerns a settlement agreement between appellant Soundbuilt Northwest LLC and respondent Commonwealth Land Title Insurance Company. The underlying facts are discussed in two previous appeals in the same matter:

No. 74128-4-I/2

Sound Built Homes, Inc. v. Dale Alan Land Dev. Co., noted at 137 Wn. App. 1055 (2007), review denied, 163 Wn.2d 1009 (2008), and Commonwealth Land Title Ins. Co. v. Soundbuilt Nw. LLC, No. 68547-3-I (Wash. Ct. App. May 28, 2013) (unpublished), http://www.courts.wa.gov/opinions/pdf/685473.pdf.

To summarize, in 2004, the Dale Alan Land Development Company (DALD) and its principal, Greg Newhall, agreed to sell a 22-lot plat in Covington, Washington, to Soundbuilt. Instead, they sold the property for a higher price to a different land developer, Chelan Homes Inc. Soundbuilt sued DALD/Newhall for repudiation of the purchase and sale agreement and recorded a lis pendens against the property.

Chelan Homes obtained a title insurance policy from Commonwealth. Due to the lis pendens, Commonwealth conditioned issuance of its title policy on the entry of an indemnity agreement with DALD. DALD agreed to indemnify Commonwealth and hold it harmless from any loss or liability arising out of the policy. The indemnity agreement was signed in July 2004.

Chelan Homes built and sold 22 homes. Commonwealth agreed to insure title on behalf of the purchasers. Then Soundbuilt prevailed on its repudiation claim, and the trial court ordered specific performance of the purchase and sale agreement. This court affirmed.

Soundbuilt sought to enforce the specific performance order against the 22 homeowners. Commonwealth intervened and filed a third party claim to enforce the indemnity agreement against DALD/Newhall.

2

Desiring to prevent enforcement of the specific performance order that would cause the homeowners to lose their titles, Commonwealth entered into settlement negotiations with Soundbuilt. The record reflects that Soundbuilt made an initial settlement demand to Commonwealth of $8 million all cash in exchange for Soundbuilt releasing its right to specific performance and the lis pendens.

The $8 million settlement demand was in excess of Commonwealth's title policy limits, which initially were $2.53 million and were later increased to $5.83 million. Commonwealth was concerned that paying Soundbuilt $8 million would undermine the indemnity claim in two ways. First, DALD/Newhall could argue that Commonwealth settled as a volunteer and was not entitled to indemnification. Second, DALD/Newhall could argue that the indemnification obligation was limited to the policy limits.

Responding to these concerns, Soundbuilt proposed to share the risk with Commonwealth in the indemnity litigation against DALD/Newhall. Soundbuilt proposed that the $8 million be split into a $5 million immediate payment and a $3 million payment contingent on Commonwealth getting a final judgment enforcing the indemnity agreement. Commonwealth agreed.

Under the settlement agreement, Soundbuilt agreed to transfer to Commonwealth the right, title, and interest of Soundbuilt in its specific performance lawsuit, the original purchase and sale agreement between Soundbuilt and DALD/Newhall, and the lis pendens filed by Soundbuilt. In this manner, Commonwealth stepped into Soundbuilt's shoes in Soundbuilt's

litigation with DALD/Newhall, while also maintaining its own indemnity claim against DALD/Newhall. In return, Commonwealth immediately paid Soundbuilt $5 million. Soundbuilt was entitled to receive an additional $3 million from Commonwealth, contingent on judicial resolution of Commonwealth's right to indemnity from DALD/Newhall. A key term of the settlement agreement made it Commonwealth's responsibility to seek a final court ruling on the indemnity obligation "as soon as reasonably possible."

Payment by DALD/Newhall under the indemnity agreement was not a sure thing. Soundbuilt and Commonwealth knew that the result of the indemnity litigation might be to establish DALD/Newhall's obligation to indemnify Commonwealth completely, not at all if the indemnity was not effective, or somewhere in between. They also understood that Commonwealth might not be able to collect on any indemnity judgment it obtained against DALD/Newhall. They agreed that if and when DALD/Newhall's liability for indemnifying Commonwealth was legally established, Commonwealth would pay Soundbuilt up to an additional $3 million, even if Commonwealth was unable to collect from DALD/Newhall:

> Contingency for Reduction in Balance Due. Commonwealth shall seek a determination of the court that DALD and Greg Newhall are obligated to indemnify Commonwealth for sums paid to SBH, and that Commonwealth's payments to SBH were not made as a volunteer. Such determination shall be sought by Commonwealth as soon as reasonably possible after Commonwealth's payment of the $5,000,000 described in Paragraph 5.2. In the event that DALD and Newhalls are found to be liable to pay Commonwealth the full $8,000,000 amount which Commonwealth has agreed to pay SBH, SBH shall be entitled to the remaining $3,000,000 described in Paragraph 5.1.

4

In the event that the King County Superior Court fails to find that DALD and Newhall are liable to Commonwealth for all sums that Commonwealth has agreed to pay to SBH, and sets a lower sum (or no sum) as the sum for which DALD and Newhall are liable to Commonwealth, then the balance owed SBH shall be reduced so that, when added to the $5,000,000 already paid to SBH, the total shall equal the sum that the King County Superior Court determines DALD and Newhall are obligated to pay to Commonwealth (but in any event SBH shall be entitled under this Agreement to retain all $5,000,000 paid).

In the event that DALD and Newhall's liability is later increased on appeal, the principal balance due SBH shall likewise be increased to conform with the appellate court's decision increasing the sum that DALD and Newhall are obligated to pay to Commonwealth on account of Commonwealth's payment to SBH; however, in no event shall the appellate court decision increase the principal balance of the additional sum above the $3,000,000.00 plus interest due SBH. In no event shall Commonwealth's obligation to make payment to SBH be dependent upon Commonwealth's ability to collect the sums adjudged to be due from DALD or Newhall.

In keeping with its obligation to seek a court ruling "as soon as reasonably possible," Commonwealth promptly moved for summary judgment on its indemnity claim against DALD/Newhall and requested judgment for $8 million. On November 18, 2008, the trial court issued a letter ruling granting Commonwealth's motion. The court later entered a final judgment for the full $8 million plus prejudgment interest, attorney fees, and costs.

Progress toward Soundbuilt's objective of receiving an additional payment from Commonwealth soon slowed when DALD/Newhall appealed the indemnity judgment to this court and also filed for chapter 11 bankruptcy. On being informed of the bankruptcy filing, this court stayed the appeal of the indemnity judgment against DALD/Newhall on May 8, 2009.

5

The bankruptcy case was converted to a chapter 7 proceeding because DALD/Newhall lacked sufficient assets to reorganize out of bankruptcy. Control of the bankruptcy case and the indemnity appeal shifted to the bankruptcy trustee.

On July 6, 2010, David Kerruish, one of Soundbuilt's attorneys, wrote to Jack Cullen, who represented Commonwealth's interests as a creditor in the bankruptcy. Kerruish proposed that if Commonwealth would reduce its claim from DALD/Newhall in the bankruptcy, Soundbuilt would reduce the amount owed by Commonwealth under the settlement agreement. Otherwise, Kerruish wrote, Commonwealth should "proceed to seek a final adjudication of the claims against Newhall, consistent with the written settlement agreement." His letter stated that "at some point the delay in pursuing the litigation becomes a breach of the settlement agreement."

On July 13, 2010, Cullen responded that Commonwealth did not want to settle. He represented, however, that in order to complete the indemnity appeal, Commonwealth would move for relief from the bankruptcy stay.

Soundbuilt believed Commonwealth was delaying resolution of the indemnity appeal to avoid having to make the contingent payment to Soundbuilt. According to Soundbuilt's closing arguments, Commonwealth originally thought Newhall had enough money to pay "every penny" of the indemnity obligation and wanted to move forward quickly. But when Commonwealth found out Newhall had no assets, Commonwealth "slowed, then stopped, and then actually started blocking efforts to get the final, nonappealable order that it had agreed to get."

Soundbuilt feared that this court would reverse the $8 million judgment on the indemnity claim and remand it for trial, a further delay. And the ultimate outcome after a trial might leave Commonwealth owing Soundbuilt less than the full $3 million. Soundbuilt wanted to accelerate getting to a final court ruling that would trigger a payment of $3 million. Soundbuilt explored with the bankruptcy trustee a proposal to dismiss DALD/Newhall's indemnity appeal.

On September 9, 2010, the bankruptcy trustee agreed, subject to court approval, to dismiss the indemnity appeal in exchange for Soundbuilt's promise to pay the bankruptcy estate $225,000 of the additional $3 million payment Soundbuilt hoped to receive from Commonwealth.

Cullen, meanwhile, delayed for several months before filing Commonwealth's motion for relief from the bankruptcy stay on October 25, 2010. The bankruptcy court granted relief from the stay in December. This court entered an order on December 20, 2010, permitting the indemnity appeal to go forward.

Commonwealth opposed permitting the bankruptcy trustee to withdraw the indemnity appeal. As a creditor, Commonwealth objected that the trustee's agreement with Soundbuilt was based on guesswork and assumptions and was not economically sound. Over Commonwealth's objection, the bankruptcy court gave its approval on December 23, 2011.

On January 13, 2012, the trustee moved this court to withdraw the pending Newhall indemnity appeal. Oral argument had been heard two months earlier, and the parties were awaiting this court's decision. The motion to

withdraw was granted, and the appeal was dismissed on February 29, 2012. This left in place the trial court's $8 million judgment against DALD/Newhall as the final court determination of the indemnity litigation. From Soundbuilt's perspective, it was time for Commonwealth to make the contingency payment of $3 million.

Soundbuilt moved the trial court to enforce the settlement agreement. Using summary judgment procedure, the trial court granted the motion and ordered Commonwealth to pay Soundbuilt $3 million plus interest, attorney fees, and costs. Commonwealth appealed. On May 28, 2013, this court found genuine issues of fact concerning the proper interpretation of the settlement agreement and reversed and remanded for trial.

At trial, each party accused the other of breach. The jury found that Soundbuilt breached the settlement agreement on September 9, 2010. This was the date Soundbuilt reached the agreement with the bankruptcy trustee to dismiss Newhall's appeal. The jury found that Commonwealth breached the settlement agreement on July 13, 2010. On that date, Cullen represented that Commonwealth would move for relief from stay so that the indemnity appeal could proceed, but he delayed several months before doing so. The jury found that Soundbuilt's breach was material and Commonwealth's was not.

After the jury verdict, both parties sought judgment. On September 18, 2015, the court entered judgment for Commonwealth. "Commonwealth's performance under the contingent payment term of the Settlement Agreement is excused as of the date of Soundbuilt's material breach of the Settlement

Agreement on September 9, 2010, and Commonwealth does not owe Soundbuilt any further amount under the Settlement Agreement." The trial court denied Soundbuilt's request for damages.

Soundbuilt moved for reconsideration or a new trial under CR 59, requesting damages and arguing that the jury's verdict was unsupported by substantial evidence. The court denied Soundbuilt's motion. Soundbuilt appeals.

## COMMONWEALTH'S NONMATERIAL BREACH

Soundbuilt argues substantial evidence is lacking to support the jury's finding that Commonwealth's breach—Cullen's delay in seeking permission to move the indemnity appeal forward—was not material.

We review the record to determine whether there was sufficient evidence to support the verdict. Millies v. LandAmerica Transnation, 185 Wn.2d 302, 316, 372 P.3d 111 (2016). There must be "no evidence or reasonable inference from the evidence to justify the verdict or the decision." CR 59(a)(7). It is an abuse of discretion to deny a motion for a new trial where the verdict is contrary to the evidence. Millies, 185 Wn.2d at 316. However, where reasonable minds could differ on the question, the court will not disturb the jury's verdict. Millies, 185 Wn.2d at 317.

We review the sufficiency of the evidence in light of the instructions given. Millies, 185 Wn.2d at 313. When there is no objection to the jury instructions, they become the law of the case. Millies, 185 Wn.2d at 313.

9

Without objection, the court instructed the jury on the definition of material breach:

> A "material breach" is a breach that is serious enough to justify the other party in abandoning the contract. A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, *and deprives the injured party of a benefit that he or she reasonably expected.*

Instruction 9 (emphasis added).

There was a delay of about three months from the day in July 2010 when Cullen said he would move for relief from the bankruptcy stay until the day he actually did so in October 2010. Cullen testified that he should have filed the motion sooner but "got swamped" with other cases. It was during this delay, in September 2010, that Soundbuilt reached an agreement with the trustee to withdraw the appeal.

Soundbuilt contends the jury should have found that the delay rendered Commonwealth's performance untimely. We disagree. Substantial evidence supports the date of breach found by the jury. And the record does not compel a finding that the three-month delay by Cullen was material. The indemnity appeal had not yet been fully briefed. Soundbuilt does not show that accelerating the indemnity appeal by three months would have discouraged Soundbuilt from its effort to have the appeal withdrawn. The jury could find that Soundbuilt was deprived of the right to a contingency payment by its own conduct in cutting off the indemnity appeal prematurely, not by Commonwealth's delay.

Soundbuilt argues that because the settlement agreement has a "time is of the essence" clause, Commonwealth's alleged breach by failure to timely

10

perform is material as a matter of law. We are not persuaded. To make this argument, Soundbuilt rephrases a holding from <u>Cartozian & Sons, Inc. v. Ostruske-Murphy, Inc.</u>, 64 Wn.2d 1, 5, 390 P.2d 548 (1964). Noting that the contract in that case did *not* have a "time is of the essence" provision, the court held that the question whether a delay in performance was a material breach depends on the surrounding circumstances. Soundbuilt cites no case holding that the converse is true where a contract *does* have a "time is of the essence" clause.

We conclude there was sufficient evidence for the jury to find that Commonwealth's breach, a three-month delay, was not material.

## SOUNDBUILT'S MATERIAL BREACH

Soundbuilt contends substantial evidence was lacking to support the finding that its agreement with the trustee constituted a material breach. As above, we review the sufficiency of the evidence in light of the instructions given. <u>Millies</u>, 185 Wn.2d at 313.

In addition to the material breach instruction quoted above, the jury was instructed that Commonwealth was excused from paying Soundbuilt the contingent payment of up to $3 million if Commonwealth proved that Soundbuilt interfered with or prevented Commonwealth from obtaining a final, nonappealable order against DALD and Newhall:

> If one party enters into a contract with another, there is an implied agreement by each to do nothing that will hinder, prevent, or interfere with the performance of the contract terms.
>
> . . . .
>
> If Commonwealth proves by a preponderance of the evidence that Soundbuilt interfered with or prevented

11

Commonwealth from obtaining a final, non-appealable order against DALD/Newhall as provided in the Settlement Agreement, then Commonwealth was excused from performing its duty of payment.

Instruction 11.

The jury was instructed to interpret the settlement agreement as to give effect to the intent of the parties at the time they entered the agreement, considering the apparent purpose of the contract and the facts and circumstances surrounding the making of the agreement:

A contract is to be interpreted to give effect to the intent of the parties at the time they entered the contract.

You are to take into consideration all the language used in the contract, giving the words their ordinary meaning, unless the parties intended a different meaning.

You are to determine the intent of the contracting parties by viewing the contract as a whole, considering the subject matter and apparent purpose of the contract, all the facts and circumstances leading up to and surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations offered by the parties.

Instruction 8.

The settlement agreement stated in paragraph 5.3 that "Commonwealth shall seek a determination of the court that DALD and Greg Newhall are obligated to indemnify Commonwealth." The agreement provided in paragraph 5.4 that Soundbuilt's attorneys "shall be entitled to review, prior to filing, all pleadings filed by Commonwealth related to the performance of" the settlement agreement but that "this right of review is for informational purposes only, and does not create any right of SBH's counsel to direct the litigation or edit the

pleadings filed." A reasonable interpretation of these provisions is that Commonwealth would control the indemnity litigation against DALD and Newhall.

A proposed term of the agreement would have returned the right to control the indemnity litigation to Soundbuilt if Commonwealth materially defaulted on its performance described in the settlement agreement. The jury heard evidence that Commonwealth successfully negotiated to eliminate this provision. Thus, the jury could readily conclude that Soundbuilt did not have the right to control the indemnity litigation.

Cullen testified that he did not know Soundbuilt was making a deal with the bankruptcy trustee and that he did not authorize Soundbuilt to do so. He said Soundbuilt's unilateral negotiations were "directly contrary to what I understood the rules to be" that Soundbuilt's attorney had laid out.

The attorneys who negotiated the settlement agreement on behalf of the parties testified as to their interpretations of the settlement agreement. Chris Brain, one of Commonwealth's attorneys, testified it was "axiomatic that if we had the burden of going forward to get the judgment [against Newhall], that Soundbuilt would not do anything to interfere with our ability to do that." He stated that Soundbuilt had a "duty not to interfere with us" and was not "free to do anything without our consent." Kerruish testified that there was no dispute that Commonwealth had the right to direct the litigation against DALD and Newhall.

From this evidence, the jury could find that Soundbuilt's agreement with the trustee breached the agreement by preventing Commonwealth from performing its obligation to seek a final, nonappealable order against DALD and

13

Newhall. The jury could find that Soundbuilt's breach was material in that it deprived Commonwealth of a benefit that Commonwealth reasonably expected. As a result of Soundbuilt's interference with the appeal, the trial court judgment setting the indemnity obligation at the full $8 million was left standing, when it might have been reduced or eliminated if the appeal had gone forward. Commonwealth's payment to Soundbuilt under the contingent payment term of the settlement agreement then would have been reduced or eliminated accordingly.

We conclude there was sufficient evidence for the jury to find that causing the indemnity appeal to be withdrawn was a material breach by Soundbuilt.

### LOST PROFITS

Commonwealth argued in closing that the $8 million demanded by Soundbuilt in the settlement agreement negotiations was unrelated to Soundbuilt's lost profits: "Now, the $8 million that they [Soundbuilt] demanded, and you heard about that demand, that had nothing to do with the amount of money that Soundbuilt was out of pocket. It didn't pay anything on the deal that fell through. It had nothing to do with their lost damages and their lost profits." Soundbuilt objected to the argument but the court overruled the objection.

Soundbuilt describes the argument as "a naked appeal to the jury to punish Soundbuilt for being greedy—an invitation to the jury to simply ignore the parties' agreement."

To obtain a new trial for alleged misconduct of counsel, a party must establish "(1) the conduct complained of is misconduct, (2) the misconduct is

14

prejudicial, (3) the moving party objected to the misconduct at trial, and (4) the misconduct was not cured by the court's instructions." Teter v. Deck, 174 Wn.2d 207, 226, 274 P.3d 336 (2012).

Soundbuilt has not established that Commonwealth's argument was misconduct. Gary Racca, Soundbuilt's owner, testified without objection that he did not actually pay for the 22-acre property and was not out of pocket any money for purchasing it. And Soundbuilt does not explain how the argument was prejudicial in the context of the entire record. The record included the settlement agreement and numerous witnesses from both parties testifying in detail about the circumstances leading up to the settlement agreement and the settlement negotiations. We reject the argument that Commonwealth committed misconduct in closing.

## SOUNDBUILT'S DAMAGES

After the verdict, Soundbuilt asked the court for an award of $3 million in expectation damages based on the jury's finding that Commonwealth was in breach. The court ruled that Soundbuilt was not entitled to damages, attorney fees, or costs. Soundbuilt assigns error to this ruling.

The burden of proving damages is on the party seeking them. 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 729, 281 P.3d 693 (2012). The general measure of damages for breach of contract is that the injured party is entitled to (1) recover all damages that accrue naturally from the breach and (2) be put into as good a pecuniary position as he would have had if the contract had been performed. 224 Westlake, LLC, 169 Wn. App. at 729.

Soundbuilt's agreement with the bankruptcy trustee, not Commonwealth's delay, stopped the indemnity appeal and is the reason the parties will never know how the appeal would have been resolved. Soundbuilt has not carried its burden of proving it was damaged by Commonwealth's three-month delay in pursuing the indemnity appeal.

Soundbuilt unpersuasively argues that the trial court's denial of damages is inconsistent with the jury verdict. The jury's finding that Commonwealth committed a nonmaterial breach does not imply a finding that Soundbuilt was entitled to an award of damages. We find no error in the ruling denying damages to Soundbuilt.

### ATTORNEY FEES

The trial court awarded Commonwealth $1,175,689.00 in attorney fees and $70,045.31 in costs as the prevailing party in a contract action with a provision for attorney fees to the prevailing party. Soundbuilt contends the court erred in its determination that Commonwealth was a prevailing party because when the jury determined that both parties breached the contract, neither party prevailed.

A prevailing party has been defined as one who obtains judgment in its favor, Seashore Villa Ass'n v. Hugglund Family Ltd. Partnership, 163 Wn. App. 531, 547, 260 P.3d 906 (2011), review denied, 173 Wn.2d 1036 (2012), and also as one against whom no affirmative judgment is entered, Eagle Point Condominium Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000).

16

Here, the trial court entered judgment in favor of Commonwealth. There was no affirmative judgment entered against Commonwealth.

Soundbuilt portrays this case as one in which there is no prevailing party for the purpose of awarding attorney fees because both parties prevailed on major issues. This case does not fall into that category because Soundbuilt was not afforded any measure of relief. See generally Eagle Point Condo. Owners Ass'n, 102 Wn. App. at 706-14. We affirm the award of attorney fees and costs to Commonwealth.

As the prevailing party, Commonwealth is also entitled to attorney fees and costs for this appeal, including those incurred in the now-consolidated appeal from the award of attorney fees and costs below and the associated supplemental briefing.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, J.

Verellen, J.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 AUG 28 AM 9: 48