IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COCO'S RESTAURANT, INC., as successor-in-interest to FAR WEST SERVICES, INC. | ) ) ) ) | No. 78759-4-I (Consolidated with No. 78952-0-I) |
| Respondent/Cross-Appellant, | ) ) ) ) | DIVISION ONE UNPUBLISHED OPINION |
| v. | ) ) | |
| HARSCH INVESTMENT PROPERTIES, LLC, as successor-in-interest to SUTTER HILL LIMITED, QUALITY FOOD SERVICE, LLC, and BANWAIT, LLC, | ) ) ) ) ) ) ) | |
| Appellant/Cross-Respondent. | ) ) ) ) | FILED: February 24, 2020 |

HAZELRIGG, J. — Coco's Restaurant, Inc. (Coco's) and Harsch Investment Properties, LLC (Harsch) were successors in interest to a lease formed in 1980 for a commercial property. Harsch terminated the lease in 2017 due to Coco's breach after multiple unanswered notices of delinquency over the course of nearly eight months based on Coco's nonpayment of the variable sum portion of the rent. Upon termination, Coco's filed suit seeking reinstatement of the lease and restitution for payments from Coco's subtenant who had paid Harsch directly during the period since termination. The court granted Coco's motion for partial summary judgment based on its equitable powers to avoid forfeiture after finding Coco's breach of the

lease to be non-material. Harsch appeals that ruling and Coco's cross-appeals the denial of their request for fees and costs.

FACTS

Harsch Investment Properties, LLC (Harsch) and Coco's Restaurant, Inc. (Coco's) were successors in interest, as landlord and tenant respectively, to a lease of a commercial property in Federal Way. Formed in 1980, the lease had an initial term of 25 years with an option to extend for three consecutive five-year terms. After assuming the lease, Coco's exercised the option for the second and third extension, setting the lease to expire on December 31, 2020. During the final extension of the lease, Coco's sublet the property to another business, Banwait, LLC (Banwait). The sublease did not alter Coco's obligations under the lease. The rent owed to Harsch consisted of two parts; 1) a fixed monthly sum and 2) a variable sum tied to the performance of the business operating on the premises.

Coco's did not make the variable sum portion payments for five consecutive quarters, beginning in the fourth quarter (Q4) of 2015; a total of $8,865.09. Harsch first sent an email to Coco's on March 31, 2016 explaining it had not received the gross sales statement and payment for Q4 of 2015. Harsch received an automatic out-of-office reply but then sent multiple other reminders to Coco's in April 2016 without response. A default notice was sent to Coco's on June 22, 2016 detailing its failure to provide gross sales statements or the variable sum portion payments for Q4 of 2015 and the first quarter of 2016. Harsch did not raise the issue with Coco's again until January 10, 2017 when they sent another default notice. On February 21, 2017, Harsch sought to terminate the lease due to the default. The

- 2 -

termination date was March 3, 2017. During this period when no variable sum portion payments were made, Coco's did tender full base rent payments. The breach was entirely based on nonpayment of the variable sum portion of rent. Coco's advanced the theory that a receptionist may have mislaid the January 2017 notice of default. They offered no explanation for the failure to respond to the prior notices from Harsch.

On March 3, 2017, Coco's responded to the termination notice and enclosed the March base rent and the gross sales statements for the missing quarters.[1] Coco's sent the full variable sum portion payment to Harsch on March 8, 2017. However, this was after the termination date set out in the February 21, 2017 notice and Harsch refused to accept the payment of the variable sum portion. Harsch executed a Sublease Recognition and Attornment Agreement with Banwait on March 4, 2017, after termination of the least with Coco's. Harsch then collected rent directly from Banwait pursuant to this new agreement. The rent paid by Banwait, first to Coco's then to Harsch, was significantly higher than the amount due to Harsch under the original lease with Coco's

On May 25, 2017, Coco's filed suit in King County Superior Court for declaratory relief, seeking a determination that the lease remained in effect because no substantial or material breach had occurred, and for a derivative claim for restitution against Harsch for the amount Banwait had paid directly to Harsch. Both parties filed motions for summary judgment. After the hearing on the motions, the trial court granted Coco's motion for partial summary judgment determining

---

[1] The letter is misdated as 2019 but all parties agree it was in 2017.

that Coco's did not materially breach the lease and therefore Harsch could not terminate it. A bench trial was conducted to determine the damages of both parties and possible restitution owed. Harsch now appeals the denial of their motion for summary judgment and grant of Coco's competing motion. Coco's cross-appeals the superior court's denial of their motion for costs and attorney fees.

## ANALYSIS

I.    Trial Court's Rulings on Parties' Motions for Summary Judgment

Harsch challenges the trial court's grant of Coco's motion for partial summary judgment and denial of their competing motion. This court reviews an order granting summary judgment de novo, considering the facts and reasonable inferences in the light most favorable to the nonmoving party. DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn. App. 205, 218, 317 P.3d 543 (2014). "Summary judgment is proper if the pleadings and accompanying documentary evidence show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. However, "[t]he general standard of review for a trial court's exercise of equitable authority is abuse of discretion." Kave v. McIntosh Ridge Primary Road Ass'n, 198 Wn. App. 812, 819, 394 P.3d 446 (2017). "[A] trial court has broad discretionary authority to fashion equitable remedies, this court reviews such remedies under the abuse of discretion standard." Emerick v. Cardiac Study Center, Inc., P.S., 189 Wn. App. 711, 730, 357 P.3d 696 (2015).

Though Harsch separately assigns error to the denial of their summary judgment motion, the analysis of the rulings on both summary judgment motions

is substantively the same since the trial court resolved the motions brought by each party on equitable grounds to avoid forfeiture. It is clear from the record that the trial court took them up and heard argument on them in the same proceeding. Harsch's argument for summary judgment was that a breach by Coco's occurred and therefore they were entitled to terminate the lease and possess the property under the terms of the lease. Coco's position in their motion for partial summary judgment was that they did not materially breach and the court should exercise its equitable discretion to prevent forfeiture. The ruling on either motion necessarily dictates the outcome of the competing motion, so they will be analyzed together here as they were at the trial court.

Harsch does not argue that the court did not have the authority to exercise its equitable powers in this context. Rather, they contend that it was wrong for the court to fashion a remedy to avoid forfeiture given the clear language of the contract about default. "Because the trial court has broad discretionary authority to fashion equitable remedies, we review such remedies under the abuse of discretion standard." Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 221, 242 P.3d 1 (2010); See also Borton & Sons, Inc. v. Burbank Properties, LLC, 9 Wn. App. 2d 599, 613, 444 P.3d 1201 (2019) (Lawrence-Berrey C.J., concurring). As the court resolved the case in equity, an abuse of discretion standard applies in reviewing the court's grant of summary judgment to Coco's. "An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." Cornish, 158 Wn. App. at 221.

A. Grant of Coco's Motion for Partial Summary Judgment

The trial court properly exercised its equitable powers to avoid forfeiture after it determined the breach by Coco's was non-material and had been cured. It is well established in Washington that forfeiture is a drastic remedy that the courts should avoid unless justice cannot be done otherwise. Stevenson v. Parker, 25 Wn. App. 639, 647, 608 P.2d 1263 (1980 (quoting Spedden v. Sykes, 51 Wn. 267, 272, 98 P. 752 (1908)); see Deming v. Jones, 173 Wn. 644, 648, 24 P.2d 85 (1933). Here, the court considered whether the breach by Coco's was material by weighing factors set out in the Restatement (Second) of Contracts Section 241. This was proper as the court engaged in this inquiry to determine whether forfeiture would be an appropriate remedy or if equity required otherwise.

Our Supreme Court has made clear that when a contract does not include a time is of the essence clause, "the question as to whether a delay in performance is a material breach depends upon the surrounding circumstances." Cartozian & Sons, Inc. v. Ostruske-Murphy Inc., 64 Wn.2d 1, 5, 390 P.2d 548 (1964). Further, "[w]hile any breach will give rise to cause of action for damages, a breach does not become cause for repudiation until it is, under all of the circumstances surrounding the contract, so material as to amount to a substantial or total failure of consideration." Id. 5-6.

The lease between Harsch and Coco's did not contain a time is of the essence clause, so the materiality analysis was appropriate. The question before the court was whether Coco's had materially breached the 40-year lease by failing to furnish the percentage of rent based on a variable sum tied to the performance

of the business operating on the premises. Jacks v. Blazer is a seminal case which makes clear that when a court seeks to determine whether one party's breach justifies the other's refusal to perform its contractual duty, the focus of the court's analysis should be whether that breach was material. 39 Wn. 277, 285-86, 235 P.2d 187 (1951).

As such, the court appropriately utilized the factors outlined in the Restatement (Second) of Contracts Section 241 in making its determination. Though Harsch argues that the court's utilization of the Restatement factors reads additional terms into the contract, this argument is without merit. The court did not utilize the Restatement factors to change the duties of either party. Neither party disputes that Coco's breached the lease. The superior court simply engaged in a materiality analysis to determine if forfeiture was a justifiable remedy; such analysis is required by law.

Deming v. Jones is the most analogous to the case at hand in terms of determining whether a breach justifies forfeiture. 173 Wn.2d 644, 24 P.2d 85 (1933). In Deming, the landlord appealed a trial court's ruling for the tenant who had breached the lease for a gasoline service station by not paying rent and allegedly engaging in the sale of liquor and gambling on the property, with an underlying argument that the tenant had artificially reduced sales at the business to reduce the rent. Id. at 645. The landlord sent multiple termination notices alleging the conduct and asserting that the tenant had breached by not paying the rent in full. Id. at 646-47. Eventually the tenant furnished the full payment of rent

due to the landlord, which was based on the gasoline sales, but the payment was not provided until after the suit commenced. Id. at 647-48.

The Supreme Court rejected forfeiture as a remedy for the failure to pay the percentage based on the sales of gasoline at the service station. Id. at 648. The Supreme Court specifically stated that "there was such carelessness and inefficient business methods as would not ordinarily be excusable. Here, that carelessness must be weighed in the scales against a forfeiture of rights which are valuable out of all proportion to the harm [the landlord] have suffered by the careless conduct." Id. In the present case, the record establishes that Coco's failed to pay a total of $8,865.09 based on the percentage of sales, but that payment was then furnished within two weeks of the notice of termination. This falls below the threshold established in Deming, which has been controlling precedent for over 75 years.

Though Harsch argues that the trial court should have strictly construed the contract terms, they were not required to do so under these circumstances. "[E]quitable relief from such [a] strict construction may be warranted in limited circumstances where an inequitable forfeiture would otherwise result." Cornish, 158 Wn. App. at 217. Here, the trial court recognized that forfeiture would result and determined, based on its materiality analysis, that it could properly exercise its equitable authority to avoid such forfeiture. We affirm the trial court's grant of Coco's partial summary judgment.

B. Denial of Harsch's Motion for Summary Judgment

Since we find that the court did not abuse its discretion in granting Coco's partial motion for summary judgment, we also find the court did not err in denying Harsch's motion for summary judgment. Harsch appears to concede that our review of the rulings on both motions will be resolved based on this court's determination of whether the trial court's exercise of equitable powers was proper. "Due to the discretionary nature of decisions made in equity, granting equitable relief on summary judgment may be inappropriate in many cases." Id. at 220. However, in Cornish we reinforced that equitable relief could be proper if a reasonable person could only have reached one result. Id. In Cornish we held that strong evidence supported the trial court's conclusion that Cornish was entitled to a grace period and that there was no dispute of material fact. Id.

The same is true here that in reviewing the trial court's exercise of an equitable remedy to ensure that forfeiture did not occur, it logically followed that Harsch's motion would be denied and was proper for the judge to take both parties' motions up at the same time, especially since neither party disputed any facts. We hold that the court did not abuse its discretion in denying Harsch's motion for summary judgment as forfeiture would result from a non-material breach and thereby the court properly exercised its equitable powers to craft an appropriate remedy.

II.     Weighing of Restatement Factors in the Context of Materiality Analysis

Though Harsch frames the issue as the court improperly drawing inferences in Coco's favor given the summary judgment posture of the case, Harsch is

actually challenging the manner by which the superior court weighed the Restatement (Second) of Contracts Section 241 factors. Harsch does not advance substantial evidence arguments to question the findings under each of the Restatement factors. Instead Harsch argues that under the summary judgment posture, the court was required to draw all inferences, or weigh the Restatement factors, in their favor as the nonmoving party. There was no dispute as to the underlying facts and the court acted within its authority to weight the various factors as it saw fit given those facts.[2] The majority of Harsch's arguments are not that the judge resolved disputed facts or made inferences as to their summary judgment motion, but that the Restatement (Second) of Contracts Section 241 factors were determined in Coco's favor.

Harsch agreed that no dispute of material fact existed at the time of argument on the summary judgment motions. The parties' competing motions engaged two different bodies of law that were juxtaposed to one another. Coco's argued for the court to take equitable action while Harsch argued for legal resolution. In order for the trial court to resolve the issue as to each party's motion, it was required to weigh and determine whether Coco's breach was material. If it was material, the equitable remedy would be rejected and Harsch would be entitled to summary judgment. Conversely, if it was non-material then the court would be able to exercise its equitable powers to avoid forfeiture. Harsch appears to agree

---

[2] Harsch advanced an argument that the percentage of rent owed was not properly calculated; not that the amount reported by Coco was inaccurate, just that the percentage calculation itself was flawed.

that the trial court was left to resolve this situation, but rejected the position that material breach analysis was necessary.

The court properly utilized the Restatement (Second) of Contracts Section 241 factors in determining if the breach was material and the process of weighing the factors may involve underlying inferences. Harsch points to no specific inferences, however, and focuses their attack on the judges' actual determination reached under each factor. The Restatement (Second) of Contracts Section 241 factors are:

> (1) whether the breach deprives the injured party of a benefit which he reasonably expected, (2) whether the injured party can be adequately compensated for the part of that benefit which he will be deprived, (3) whether the breaching party will suffer a forfeiture by the injured party's withholding of performance, (4) whether the breaching party is likely to cure his breach, and (5) whether the breach comports with good faith and fair dealing.

Restatement 2d Section 241(a)-(e). These factors strongly weigh against materiality which is why the court properly exercised its equitable powers to craft a resolution to avoid forfeiture. The only factor that might weigh in favor of Harsch is the first, whether the breach deprives the injured party of a benefit which is reasonably expected. It is clear Harsch was deprived of a portion of the rent due but they never pointed to any specific harm beyond that, such as how the delay in payment of the variable sum portion of the rent led to lost opportunity.

The second factor, whether the injured party can be adequately compensated for the part of the benefit which was deprived, weighs in favor of the trial court's finding that the breach was non-material since it was a financial benefit that was provided to them prior to litigation. The third factor also weighs in favor

of a determination that the breach was non-material, as Harsch's termination of the lease would lead to forfeiture of all rights Coco's possessed under the lease, including the collection of separate rent from Banwait. The fourth factor, whether the breaching party is likely to cure, also indicates the breach was non-material since Coco's had furnished payment within fifteen days of the notice of termination. The final factor, whether the breach comports with good faith and fair dealing, is easily answered since Harsch agreed that no bad faith existed. Overall the undisputed facts indicate the breach was non-material. In analyzing the case under the Restatement factors, the judge did not improperly draw any inferences in favor of Coco's.

III.     Cross-Appeal by Coco's as to Attorney Fees

Coco's cross-appeals in this case based on the court's denial of their motion for attorney fees and costs under a provision in the contract. However, since the court exercised its equitable discretion in crafting a remedy, it was not required to follow the fee and cost provisions of the contract which would award them to the prevailing party in certain contexts.

We review the legal basis to award fees under statute, contract, or in equity de novo. In re Wash. Builders Ben. Trust, 173 Wn. App. 34, 83, 293 P.3d 1206 (2013). The trial court fashioned an equitable remedy to prevent forfeiture, but ruled that as part of its remedy it would be inequitable to allow Coco's to collect fees and costs. The court reasoned that though neither party acted in bad faith, Coco's actions led to Harsch's attempt to terminate the lease.

The court's rationale is correct and the record is clear as to the authority upon which it relied in entering its order. In Gander v. Yeager this court reviewed a trial court's denial of fees after a party argued they should been awarded since they prevailed on equitable grounds regarding an arbitration agreement. 167 Wn. App. 638, 642-43, 282 P.3d 1100 (2012). The court noted that equitable grounds that usually allow for attorney fees "are the bad faith or misconduct of a party, 'actions by a third person subjecting a party to litigation,' and the dissolution of wrongfully issued temporary injunctions." Id. at 647 (quoting City of Seattle v. McCready, 131 Wn2d 266, 274-75, 931 P.2d 156 (1997)). The court rejected the claim that the appellant was entitled to attorney fees from the trial court's equitable remedy. Id. at 650. The trial court in Gander offered a similar rationale to that of the court in the present case in that the attorney fees were contemplated within the context of the equitable remedy as a whole, with the superior court looking to the actions of both parties that led to the need for the litigation. Id. at 643.

It follows that since Coco's prevailed based on equitable grounds to enforce a right under the contract that the fee provision contained within the lease is not broad enough to include suits based on equity, thereby the court was not required to award fees and costs. The lease's fee provision states:

> In the event any action is brought by Landlord to recover any rent due and unpaid hereunder or to recover possession of the leased land, or in the event any action is brought by Landlord or Tenant against the other to enforce or for the breach of any of the terms, covenants or conditions contained in this lease, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed by the court, together with costs of suit therein incurred.

This provision provides that Coco's would be able to recover if it had prevailed based on the "terms, covenants or conditions contained in the lease." However, this was not how they prevailed in this case. Here, the court acted within its discretion to craft an equitable remedy and therefore the law did not require a fee award to Coco's. We affirm the trial court's denial of Coco's motion for fees and costs as well as the denial for the reconsideration of that motion. Additionally, though Harsch argues for attorney fees under RAP 18.1, they are not the prevailing party on appeal and that request is denied.

Affirmed.

WE CONCUR: